**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANTHONY HALL,** | * | |
| **Plaintiff,** | * | |
| v. | | |
| | * | **CASE NO. 1:24-CV-01137-RDB** |
| **BALTIMORE POLICE DEPT.,** *et al.*, | | |
| | * | |
| **Defendants.** | | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \*

## ORDER

AND NOW, this _____ day of _____, 2024, upon consideration of the Motion to Compel Plaintiff and Motion to Show Cause as to the Mid Atlantic Innocence Project regarding its deficient response to a document subpoena, it is **HEREBY ORDERED** that the Motion is **GRANTED**. It is **FURTHER ORDERED** that MAIP respond to the document subpoena.

BY THE COURT:

_____
The Honorable Richard D. Bennett
United States District Judge

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANTHONY HALL, | * | |
| Plaintiff, | * | |
| v. | | |
| | * | CASE NO. 1:24-CV-01137-RDB |
| BALTIMORE POLICE DEPT., *et al.*, | | |
| | * | |
| Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**INDIVIDUAL DEFENDANTS' MOTION TO COMPEL PLAINTIFF AND MOTION
FOR RULE TO SHOW CAUSE AS TO THE MID ATLANTIC INNOCENCE PROJECT
REGARDING ITS DEFICIENT RESPONSE TO A DOCUMENT SUBPOENA**

Now comes  Donald Licato and Frank Barlow ("Individual Defendants"), by and through

undersigned counsel, and hereby respectfully move this Honorable Court pursuant to Fed. R. Civ.

P. 45 and 37, for an order that the Mid-Atlantic Innocence Project ("MAIP") show cause why it

should not be held in contempt of Court for failure to comply with a properly issued subpoena,

and, for an order compelling Plaintiff and MAIP, to comply with a properly served subpoena to

produce certain documents heretofore retained by MAIP. In support of said motion, Individual

Defendants state the following:

**INTRODUCTION**

The discovery process is supposed to facilitate the exchange of information such that

disputes in federal courts may be resolved on their merits consistent with truth and justice. Fed. R.

Civ. P. 1. Individual Defendants seek compliance with their subpoena to MAIP so that they may

establish their innocence contrary to Plaintiff's allegations that they maliciously prosecuted him

by fabricating witness statements and withholding exculpatory evidence.[1] *See* ECF 1 at ¶¶ 178–185, 194. Individual Defendants' subpoena to MAIP seeks documents that are at the very core of Plaintiffs' claims. While Plaintiff failed to even provide a privilege log, as described in detail below, the MAIP file contains factual statements obtained from the very witnesses who Plaintiff alleges provided fabricated testimony. Similarly, the MAIP file likely also contains criminal defense file material that is needed in order to assess Plaintiff's *Brady* claim. Thus, the MAIP file is relevant to the claims and defenses in this case, its documents cannot be obtained from other sources, and any work product protection was waived when the Complaint placed it at issue. Individual Defendants therefore respectfully request that the Court compel Plaintiff to produce the MAIP file or, alternatively, order that MAIP show cause as to why it should not be held in contempt for failing to comply with the subpoena at issue. Similarly, the Court should order MAIP to produce a privilege log for any documents that it continues to withhold.

### **Factual Background**

This case arises out of the arrest and prosecution of Plaintiff for the 1991 murder of Gerard Dorsey ("Victim"). ECF 1 at ¶ 36, 91, 97, 118. At Plaintiff's jury trial in June of 1992, the State presented eyewitnesses Nancy Hill and Gerald Patterson. Ms. Hill testified that just before the shooting she was walking near the 600 block of Payson Street when the Victim ran past her, knocking down one of her children. *See* Ex. 1 at NK DEF 1031:1–1033:24 (Nancy Hill Trial Testimony, Apr. 29, 1992). She further testified that the victim was pursued into an alley by two men with guns in their hands. *Id.* Ms. Hill identified Plaintiff as one of the men who pursued the Victim into the alley, which immediately preceded the sound of gunshots. *Id.* at 1033:7–22;

---

[1] Although the subpoena was issued to MAIP, it was Plaintiff who responded with formal objections to the subpoena. It is believed that the MAIP file—or at least portions of it—may have been tendered to Plaintiff's current counsel. As described below, Plaintiff's current counsel appears to at least possess a copy of a summary from MAIP's 2015 interview with witness Nancy Hill.

1034:7-15. When Ms. Hill identified Plaintiff, he was someone she had seen "daily" before and after the shooting. *Id.* at 1039:1-20.

Patterson testified that he was in a truck on Edmondson Avenue when he observed three men run past the vehicle; he saw one of the men with a gun. *Id.* at 1061:15-25. Patterson identified Plaintiff as the man he saw with the gun. *Id*. at 1062:7-25. The jury credited the testimony of Hill and Patterson and convicted Plaintiff of second-degree murder and a related gun charge. In July of 1992, the Baltimore City Circuit Court sentenced Plaintiff to maximum consecutive terms of incarceration totaling 50 years.

In 2004, MAIP began reinvestigating Plaintiff's case on his behalf. ECF 1 at ¶¶ 123–133 (relying on MAIP's interviews with Deborah Saunders and Gerald Patterson). Seventeen years later, in June of 2021, Plaintiff filed a Petition for Writ of Actual Innocence ("WAI Petition"); Plaintiff amended his WAI Petition in February of 2023. On March 8, 2023, the Baltimore City Circuit Court held a hearing on Plaintiff's WAI Petition. Plaintiff called Patterson at this hearing but did not call Hill. At the hearing, the State expressed its opposition to Plaintiff's Petition, but ultimately stated that they had "no indication" whether multiple eyewitness statements, including multiple statements of Patterson, were disclosed to the defense. *See* Ex. 2 at NK DEF 1225:4–1228:8 (Transcript, WAI Hearing. Mar. 8, 2023). Rather, the State argued that Plaintiff's Petition should be denied because Hill's uncontroverted trial testimony was substantial enough to overcome Mr. Patterson's recantation and the potential withholding of multiple eyewitness (but not identifying) statements. *Id.* at 1228:9–1231:1. The State mistakenly represented to the Circuit Court that eyewitness Hill was deceased. *Id.* at NK DEF 1230:1-3. Plaintiff did not clarify this error and permitted the Circuit Court to proceed with a ruling under this misimpression. *Id.* at 1234-1235.

4

The Circuit Court heard testimony from Vivian Williams, Deborah Saunders, Gerald Patterson, and Dr. Jennifer Dysart (an opinion witness regarding the social psychological factors relating to eyewitness identification). On March 15, 2023, the Circuit Court granted Plaintiff's Petition, vacated his conviction, and awarded him a new trial. *See* Ex. 3 at NK DEF 1304 (Ruling and Order Granting Petition for Writ of Actual Innocence). On April 18, 2023, the State dismissed the indictment. ECF 1 at ¶ 143.

Plaintiff next sought compensation from the State of Maryland by seeking an Order of Eligibility for Compensation with the Office of Administrative Hearings pursuant to the Walter Lomax Act. *See* Code of Maryland Regulations 28.05.01.04. Days before the administrative hearing was scheduled to commence, on October 16, 2023, Nancy Hill executed a typed affidavit consisting of three pages exclusive of the signature page where she recanted important parts of her trial testimony. *See* Ex. 4 at Plaintiff 1567–70 (Affidavit of Nancy Hill). This affidavit was notarized by investigator Paul Bressler, who was working alongside Plaintiff's current counsel, Kobie Flowers. *See* Ex. 5 at NK DEF 2245-2249 (Plaintiff's Detailed Transaction List); *See also* Ex. 4 at Plaintiff 1570 (Affidavit of Nancy Hill). Based on the time records Plaintiff submitted to the OAH, this affidavit was drafted and typed by Plaintiff's current civil counsel before this lawsuit was filed. *See* Ex. 5 at NK DEF 2246; *See generally* Ex. 6 at Plaintiff 1585–1589.

At the OAH hearing, Hill testified, as well as Edward Patterson, the brother of Gerald Patterson. *See* Ex. 6 at 1573–91. Hill testified that she told the police she saw men running after the Victim, but that the police made her say that Plaintiff was one of them after she identified him in a photo book. *Id.* at 1578-88. Further, Hill testified that, in 2015, a person came to her home whom Hill described as "working with the Innocent Victims."[2]  *Id.* at Plaintiff 1585. When

---

[2] Upon information and belief, the person who interviewed Ms. Hill around 2015 represented Plaintiff and worked with the MAIP.

questioned about her involvement, Hill testified, "No, you need to understand. I never wanted to be involved. I don't." *Id.* at 1585. She further testified that about "a month" before her OAH testimony, another "investigator came out left his card for me to call about the case…" *Id.* at 1585–86. Hill testified to approximately two more phone calls with this investigator, and that these subsequent calls included Plaintiff's counsel, Kobie Flowers. *Id.* at 1586. Eventually, Ms. Hill met with Mr. Flowers and the investigator, whom she identified as "Mr. Paul," for approximately one hour. Ms. Hill then testified that she met again with the investigator to sign her affidavit. *Id.*

On April 18, 2024, Plaintiff filed this civil rights lawsuit against Individual Defendants and BPD. *See* ECF 1. The complaint alleges that the testimony of Patterson and Hill against Plaintiff was coerced and fabricated by Individual Defendants. (See, e.g., ECF 1 ¶ 5). It further alleges that information was suppressed "from various eyewitnesses". (ECF 1 ¶ 9). Furthermore, the Complaint alleges that MAIP "reinvestigated Mr. Hall's conviction and, based on newly discovered evidence, filed a Petition for a Writ of Actual Innocence in June 2021 that was amended in February 2023. (ECF 1 ¶ 14).

On July 25, 2024, Defendants served a subpoena on MAIP requesting any and all documents in its possession relating to Anthony Gregory Hall and/or the murder of Gerard Anderson Dorsey. *See* Ex. 7 (Subpoena and Rider to MAIP with Proof of Service, August 8, 2024). The subpoena rider requested information including, but not limited to the file maintained during MAIP's representation of Plaintiff and any statements, notes, summaries, memoranda, or correspondence, including electronic, handwritten, typed, or otherwise, regarding any witness, and requested a privilege log of all documents or portions of documents for which a privilege is asserted. *Id.* MAIP accepted service via email on August 6, 2024. *See* Ex. 8 (Email Correspondence with MAIP, August 6, 2024). On August 7, 2024, Plaintiff submitted a formal objection to the

MAIP subpoena on behalf of MAIP. *See* Ex. 9 (Plaintiff's Objection to Subpoena). On August 16, 2024, MAIP said that they were standing by the objections that Plaintiff made and that they intended to produce their complete file to Plaintiff's counsel for review. *See* Ex. 10 (Email Requesting MAIP Preserve Records). Counsel for Individual Defendants provided notice to MAIP to preserve its file and objected to MAIP tendering its file directly to Plaintiff's counsel absent an agreed upon procedure to preserve the file's integrity. *Id.* Neither MAIP nor Plaintiff submitted a privilege log. *Id.* On August 21, 2024, Counsel for Plaintiff, Counsel for Individual Defendants, and counsel for MAIP had a meet and confer phone meeting where Plaintiff and MAIP rested on their formal objections and continued to refuse to even provide a privilege log.

## **Legal Standard**

Under the Federal Rules of Civil Procedure, district courts have broad powers to govern the conduct of discovery. *Dashiell v. Montgomery County*, 131 F.R.D. 102, 103 (D. Md. Nov. 16, 1989). Rule 45 commands each person, to whom a subpoena is directed to "produce designated documents," to comply with said subpoena at "a specified time and place." Fed. R. Civ. P. 45(a)(1)(A). Rule 45 also provides that a "subpoena may command a person to comply within 100 miles of where the person resides, is employed, or regularly transacts business." *Id.* at R. 45(c)(1). Lastly, Rule 45 makes clear that a person who disobeys a subpoena, or a subpoena-related order, may be subject to contempt sanctions. *Id.* at R. 45(g). "[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26." *Phillips v. Ottey*, et al., No. 8:14-cv-00980-DKC, 2016 WL 6582647, at *2 (D. Md. Nov. 7, 2016). "Thus, regardless of whether the Court considers [the parties'] Motion under Rule 45 or Rule 26, the Court must review [ ] subpoenas under the relevancy standards set forth in Rule 26(b)." *Id.* Under Rule 26(b),

documents are discoverable so long as they are (1) nonprivileged, (2) relevant to any party's claim or defense, and (3) proportional to the needs of the case.

## Discussion

### I.      Defendants' Subpoena Was Properly Served Upon MAIP, And, In Any Event, MAIP Accepted Service.

Individual Defendants validly served their subpoena upon MAIP and, in any event, MAIP waived any potential defects in service when it accepted service. On July 25, 2024, Individual Defendants emailed and mailed a subpoena to MAIP's director, Shawn Armbrust. *See* Ex. 11 (Individual Defendants' Subpoena and Rider MAIP, July 25, 2024). On August 6, 2024, Ms. Armbrust, Executive Director Mid-Atlantic Innocence Project, indicated she would accept service via email. *See* Ex. 8 (Email from Shawn Armbrust in Response to Subpoena). Additionally, she requested that Individual Defendants update the physical address on the subpoena because MAIP had moved their office. *Id.* Individual Defendants issued a new subpoena with updated address as requested by Ms. Armbrust on August 8, 2024. *See* Ex. 7 (Individual Defendants' Subpoena and Rider MAIP, August 8, 2024). Ms. Armbrust did not independently respond to the August 8, 2024 subpoena; however, she said that MAIP was standing by Plaintiff's objections to the subpoena and planned to produce MAIP's entire file to Plaintiff's counsel. *See* Ex. 10 (Email Requesting MAIP Preserve Records).

Since Ms. Armbrust previously stated she would accept service via email and Individual Defendants amended the subpoena to reflect MAIP's updated address as requested by its Executive Director, the subpoena issued to MAIP was properly served and any objections to service are waived.

### II.     Plaintiff's Outright Refusal to Produce the MAIP File Without Any Privilege Log Is Legally Unsupportable Where The Documents Sought Are Relevant to the Claims and Defenses.

Plaintiff blanketly asserts work product privilege over MAIP's entire file but failed to even produce a privilege log as required by Rule 26. The position taken by Plaintiff and MAIP is patently unsupportable in that it abrogates basic discovery rules favoring disclosure of relevant, non-privileged material. The party claiming the protection of the attorney-client privilege, or the work product doctrine bears the burden of proof as to its application. *See*, *e.g.*, *Solis v. Food Emp'rs Labor Relations Ass'n*, 644 F.3d 221, 232 (4th Cir. 2011). It must assert "privilege/protection with particularity for each document, or category of documents, for which privilege/protection is claimed." *Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008). Further, Guideline 10(d)(ii)(b) of the Local Rules states that "a party objecting to the production of a particular document under an analogous provision of the federal rules, *see* Fed.R.Civ.P. 26(b)(5)(A)(ii), should include in its particularized description of the allegedly protected documents."[3] *Am. Home Assur. Co. v. KBE Bldg. Corp.,* No. CIV. CCB-13-1941, 2015 WL 348292, at *13 (D. Md. Jan. 13, 2015).

Plaintiff in this case is alleging that Individual Defendants fabricated witness statements from Hill and Patterson and withheld information from his criminal attorneys. Moreover, Plaintiff is alleging that MAIP obtained "newly discovered" evidence that led to his exoneration. (ECF 1 ¶ 14). Individual Defendants served a subpoena on MAIP for its file—including any witness statements—in order to test Plaintiff's allegations and defend against them. For example, if the MAIP interviewed Hill and she affirmed her trial testimony (as Defendants suspect), this would

---

[3] Guideline 10(d) provides that "[i]n accordance with Fed. R. Civ. P. 26(b)(5), where a claim of privilege is asserted objecting to [a document request, or any part thereof], and information is not provided on the basis of such assertion[,]" certain information should be provided, if known or reasonably available, by the party asserting privilege, to wit: (i) the type of document; (ii) the general subject matter of the document; (iii) the date of the document; and (iv) such other information as is sufficient to identify the document, including, where appropriate, the author, addressee, custodian, and any other recipient of the document, and, where not apparent, the relationship of the author, addressee, custodian, and any other recipient to each other…).

directly rebut Plaintiff's claims that Hill's testimony was fabricated by Individual Defendants. Similarly, if Plaintiff was aware that Hill stood by her testimony in 2015 yet permitted the State to erroneously believe that Hill was deceased when it was litigating the Petition for Writ of Innocence, this would be contrary to Plaintiff's allegation that the SAO "would have dismissed the case" if only the true information regarding the witnesses was disclosed. (ECF 1 ¶ 11).

Indeed, the evidence evaluated by Individual Defendants to date suggests that Hill was interviewed by MAIP and that she told the MAIP investigator that, contrary to Plaintiff's current allegations of fabrication, her testimony provided at trial was true. While Plaintiff was still incarcerated in June of 2015, he and his mother discussed that an investigator working on his behalf located Nancy Hill. *See* Ex. 12 at NK DEF 3665 (Recorded call, June 28, 2015, Disk 1, Call 48 at minute 11:30–12:57). Plaintiff relayed to his mother, "Now they tell me that me they talked to Nancy and she [sic] talking about well whatever she told the police is her original story, that's what it was." *See* Ex. 12 at NK DEF 3665 (Recorded call, June 28, 2015, Disk 1, Call 48 at minute 11:30–12:57). This is also consistent with time records submitted by Plaintiff's counsel which indicates that on September 19, 2023, they billed for review of a "Nancy Hill MAIP interview memo." *See* Ex. 5 at NK DEF 2245 (Plaintiff's Detailed Transaction List (highlighted entry September 19, 2023)). This demonstrates that MAIP's file contains an interview memorandum documenting Hill's account and that the MAIP memo is possessed by Plaintiff's current counsel.

Plaintiff's position that the entire MAIP file is work product and that he is not even required to submit a privilege log should be rejected. "There are two types of attorney work product[,] (1) fact work product, which is 'a transaction of the factual events involved,' and (2) opinion work product, which 'represents the actual thoughts and impressions of the attorney.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 174 (4th Cir. 2019), *as amended* (Oct. 31, 2019)

10

(quoting *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017). Although the attorney opinion work product is protected from disclosure, production of fact work product may be compelled "in limited circumstances, where a party shows 'both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship.'" *In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 174 (4th Cir. 2019), as amended (Oct. 31, 2019) (quoting *In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017)); *see* Fed. R. Civ. P. 26(b)(3).

As explained, the statements of Hill, Patterson, and other witnesses go to the very heart of Plaintiff's fabrication and *Brady* claims. MAIP's file will shed light on these allegations because they will reveal what the witnesses were saying without any alleged pressure by the police or the parties in this civil litigation. Similarly, MAIP's file is itself legally significant to the *Brady* claim due to the allegations in the Complaint which assert that MAIP located "new discovered evidence." (ECF 1 ¶ 14). For this allegation to have any meaning, MAIP would have to had access to the original SAO files and compared its alleged new evidence to the original materials. Thus, even the absence of such materials within the MAIP file would be relevant to defend against the *Brady* claim. Additionally, the MAIP investigation was approximately 10 years closer in time to the original investigation than the present and it is more likely that any witnesses MAIP spoke with would have remembered the incident at issue in the complaint. Indeed, Individual Defendants issued a separate subpoena to Plaintiff's trial counsel but received a no records response. (Exhibit 13, Plaintiff's Objections to Subpoena to Kenneth Williams). Documents of this nature—formal discovery, correspondence, documents from BPD, and documents from SAO—are relevant to the claims and defenses in this case and not covered by the work product doctrine at all.

Additionally, documents from the MAIP file that memorialize facts witnesses provided to MAIP investigators or attorneys are fact work product, not opinion work product. These materials are highly relevant to the claims and defenses in this case and are unavailable from any other source. Statements from key witnesses provided nearly ten years ago likely will be needed for impeachment purposes and will certainly assist witnesses with refreshing recollection. This is particularly true regarding Hill, who is believed to have had two serious health incidents that could impact her memory according to Plaintiff's own memorandum from an interview they conducted in 2023. *See* Ex. 14 NK DEF 2001 (Memo of Interview with Nancy Hill). Therefore, Plaintiff and MAIP should be ordered to produce the MAIP file and tender a privilege log for any documents that it continues to reasonably believe are privileged.

### III. Well-settled Principles of At-issue Waiver Preclude Plaintiff and MAIP from Asserting Privilege Over Factual Material Affirmatively Put At Issue in Plaintiff's Lawsuit.

As demonstrated above, the Complaint places at issue what is and what is not in the criminal defense file because it alleges that exculpatory or impeachment information was withheld from the SAO and Plaintiff's criminal defense counsel. (ECF 1 ¶ 8). Similarly, the Complaint places at issue Plaintiff's actual innocence and whether the witness statements of Patterson and Hill were truthful or fabricated. (ECF 1 ¶¶ 3, 4, 8). The Complaint similarly places at issue the accounts provided by "various eyewitnesses" that Plaintiff claims excluded him and establish his innocence. Accordingly, the law applicable to "at issue waiver" dictates that Plaintiff cannot simultaneously make a claim that this evidence was fabricated and withheld while shielding these allegations from scrutiny through invocations of attorney-client or work-product doctrines.

"A party is treated as having waived its privileges if: (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative

act, the asserting party put the protected information at issue making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense." *United States v. White*, 944 F.Supp. 2d 454, 459 (D.S.C. 2013) (citing *Small v. Hunt*, 152 F.R.D. 509, 512 (E.D.N.C.1994), citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D.Wash.1975). "[T]he law regarding waiver prevents a party from placing some privileged information into evidence for his own benefit, then arguing against disclosure of the remainder of the privileged information, when the failure to disclose would prove manifestly unfair to the opposing party." *In re Hillsborough Holdings Corp.*, 176 B.R. 223, 239 (M.D. Fla. 1994) (citing *Cox v. Administrator U.S. Steel & Carnegie*, 17 F.3d 1386 at 1418 (11th Cir. 1994) (citing *Pitney-Bowes, Inc. v. Mestre*, 86 F.R.D. 444, 4447 (S.D.Fla.1980).

Here, Plaintiff impermissibly seeks to have it both ways. Plaintiff alleges that Individual Defendants fabricated evidence, coerced witnesses, and withheld *Brady* material in bad faith. However, Plaintiff then denies Individual Defendants access to highly relevant information that is vital to Individual Defendants' defense under a broad assertion of privilege.

To adequately defend the allegations in this case, Individual Defendants need access to the contents of MAIP's file, much of which is likely not even protected by privilege or work product doctrine. Even to the extent it is, however, these doctrines are in derogation of the truth-seeking function of discovery and were waived when Plaintiff chose to place the MAIP file at issue. (ECF 1 at ¶ 14) (alleging that MAIP reinvestigated Plaintiff's case and identified "newly discovered evidence"). Therefore, MAIP and Plaintiff should be ordered to produce the MAIP file as responsive to Individual Defendants' July 25 subpoena. Such information is directly relevant to Individual Defendants' defense, and they are entitled to review it.

As stated, MAIP began representing Plaintiff in approximately 2004. MAIP described its investigation, stating "MAIP began diligently investigating Mr. Hall's case by trying to locate and interview witnesses." *See* Ex. 15 at Plaintiff 1502 (Petitioner's First Amendment to Petition for Writ for Actual Innocence); *see also id.* at 1503 ("…Mr. Hall's legal team has continued to investigate and learn new facts that further demonstrate his innocence[.]") Specifically, MAIP interviewed Edward Patterson, Deborah Saunders, Tyrone Rice and Gerald Patterson. *Id.* at 1502–1503, 1506–1507. Further, Ms. Hill testified that an investigator from the Innocence Project came to see her in 2015. *See* Ex. 6 at Plaintiff at 1585.

Without access to the factual material gathered by MAIP on Plaintiff's behalf, it is impossible for Individual Defendants to know the extent of MAIP's investigation, the documents it gathered, the alleged "newly discovered evidence" Plaintiff claims MAIP discovered, and the circumstances of any witness recantations. The only source for this claim-contingent information is MAIP. *See* discussion, *supra* at § II. Quite simply, Plaintiff cannot have it both ways. If Plaintiff wants to pursue fabrication and *Brady* allegations against Individual Defendants, then he is required to comply with Individual Defendants' subpoena by producing the MAIP file which contains witness statements and constitutes the criminal defense file from which Plaintiff claims materials were withheld. Plaintiff may not use his criminal defense files—including the MAIP files—as both a sword and shield. Therefore, the MAIP file should be ordered produced to Individual Defendants and any claimed privileges that apply should be logged such that the Court may evaluate whether those invocations are appropriate.

**Efforts to Resolve the Issues Raised in This Motion Without Court Involvement**

A "meet and confer" conference was held via phone on August 21, 2024, between counsel for Individual Defendants, counsel for MAIP, and Plaintiff's counsel to discuss Plaintiff's and

MAIP's objections to Individual Defendants' subpoena. The Parties could not reach a resolution, even though Defendants offered to pay the cost for a third-party document service to scan and Bates number MAIP's file, to be followed by Plaintiff's counsel having an opportunity to conduct a privilege review. Plaintiff's counsel and counsel for MAIP opposed this option, citing their existing objections asserting work product and attorney-client privilege protecting the entirety of MAIP's file from disclosure; neither counsel made any representation regarding when Defendants would receive a privilege log.

Individual Defendants, therefore, seek: (1) an order compelling MAIP to show cause as to why it should not be held in contempt for failing to produce any material in response to a properly served subpoena; and (2) an order compelling Plaintiff to produce the MAIP documents which are in Plaintiff's possession or control.

WHEREFORE, Individual Defendants request that this Court enter an order compelling the full production and inspection of documents by MAIP, and for such other relief as this Court may deem appropriate.

DATED: October 30, 2024                                  Respectfully submitted,


                                        _/s/ Jami L. Galbraith_____
                                        Shneur Nathan, Bar No. 20707
                                        Avi T. Kamionski, Bar No. 20703
                                        Alex S. Rothstein, Bar No. 23228
                                        Jami L. Galbraith, Bar No. 80006
                                        Nathan & Kamionski LLP
                                        575 S. Charles St., Suite 402
                                        Baltimore, MD 21201
                                        Phone: (410) 885-4349
                                        Fax: (952) 658-3011
                                        snathan@nklawllp.com
                                        akamionski@nklawllp.com
                                        arothstein@nklawllp.com
                                        jgalbraith@nklawllp.com
                                        *Counsel for Officer Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30th, 2024, I caused the foregoing document to be electronically filed with the Court's CM/ECF system, which will send an electronic copy of the same to all counsel of record.

/s/ *Jami L. Galbraith*