**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ANTHONY HALL,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 1:24-1137-RDB** |
| **BALTIMORE POLICE DEP'T,** | * | |
| ***et al.,*** | * | |
| **Defendants.** | * | |
| | * | |

\*      \*      \*

<u>**MEMORANDUM OPINION**</u>

THIS MATTER is before the Court regarding various discovery-related motions and disputes concerning Plaintiff Anthony Hall ("Plaintiff" or "Mr. Hall"), Defendants Donald Licato and Frank Barlow (collectively, "Individual Defendants") and the Baltimore Police Department ("BPD"), and non-party Mid-Atlantic Innocence Project ("MAIP").[1] *See* ECFs 52-53, 66-67, 81, 85, 88-89. On September 17, 2024, in accordance with 28 U.S.C. § 636 and Local Rules 301 and 302, Judge Bennett referred this matter to me for "discovery and related scheduling[.]" ECF 46. The following week, I denied Defendants' first Motion to Compel and to Show Cause without prejudice. ECF 54. Now pending are several matters presented to the Court through both formal and informal filings:

---

[1] The Complaint also names as a defendant the Estate of John Barrick, a former BPD officer now deceased. The estate is represented by the same counsel representing Defendants Licato and Barlow. However, counsel for those individuals styled the pending motions as being on behalf of only Defendants Licato and Barlow. Therefore, for simplicity in resolving the motions addressed here, the collective shorthand "Individual Defendants" does not include John Barrick or his estate.

(1) Defendants' Motion to Amend Scheduling Order, ECF 52;

(2) Plaintiff's Motion to Strike Defendants' Motion to Amend, ECF 53;

(3) Individual Defendants' Motion to Compel Plaintiff and MAIP to comply with a subpoena and Motion to Show Cause as to MAIP for failure to comply, ECF 66;

(4) Individual Defendants' Motion for Leave to File Electronic Media in support of their Motion to Compel, ECF 67;

(5) Individual Defendants' Motion for Leave to Cite Additional Support for Motion to Compel and Motion to Show Cause, ECF 81;

(6) Plaintiff's Response in Opposition to Individual Defendants' Motion for Leave, ECF 85; and

(7) Individual Defendants' Motion to Amend Scheduling Order, *see* ECFs 88-89.

Each of these motions has been briefed formally or, in the case of the January 2025 Motion to Amend, briefed informally, all consistent with the Court's order regarding discovery disputes (ECF 15), the order dismissing without prejudice the first Motion to Compel (ECF 55), and the Local Rules. After receiving notice of the dispute concerning the January 2025 Motion to Amend, the Court scheduled a telephone conference, and the parties submitted brief letters regarding their positions. On January 16, 2025, the Court held a telephone conference with counsel for the parties. This opinion memorializes and elaborates on the rulings issued at the conclusion of the telephone conference. For the reasons stated during the conference and below, Defendants' Motion to Amend and Individual Defendants' second Motion to Amend the Scheduling Order are GRANTED IN PART and DENIED IN PART, Plaintiff's Motion to Strike is DENIED, Individual Defendants' Motions for Leave are GRANTED, and Individual Defendants' Motion to Compel and Motion to Show Cause is DENIED.

I.    **BACKGROUND**[2]

  *A.  Mr. Hall's Allegations*

Mr. Hall alleges that BPD and three former officers—Donald Licato, Frank Barlow, and John Barrick—concealed exculpatory evidence and coerced false witness testimony during Plaintiff's 1992 murder trial.  Compl., ECF 1, at ¶ 7-9.  This trial ended with a conviction for second-degree murder and the use of a firearm in the commission of a violent crime.  *Id.* at ¶¶ 1, 12, 20.  Defendants led the investigation in Plaintiff's case and, according to Plaintiff, "spoke to at least ten witnesses" including Nancy Hill ("Ms. Hill") and Gerald Patterson ("Mr. Patterson").  *Id.* at ¶¶ 37, 40, 69, 82.  At trial, the Baltimore City State's Attorney's Office ("SAO") relied on the testimony of Ms. Hill, Mr. Patterson, BPD Officer Barrick (whose estate is named as a defendant), and BPD Officer Bruce Button.  *Id.* at ¶ 103.

Upon Plaintiff's request in 2004, MAIP began investigating his conviction in 2005.  *Id.* at ¶ 123; Affidavit of Shawn Armbrust, ECF 66-21 ("Armbrust Aff."), at ¶ 4.  Plaintiff contends that MAIP's investigation revealed evidence that Defendants failed to disclose inconsistent witness statements and pressured witnesses, including Ms. Hall and Mr. Patterson, to identify Plaintiff as the perpetrator.  Compl., at ¶ 124-33.  After spending more than thirty years in prison and on parole, Plaintiff filed a Petition for a Writ of Actual Innocence ("WAI") on June 11, 2021.  *Id.* at ¶¶ 12, 14, 134.  On March 15, 2023, the Circuit Court for Baltimore City granted the WAI, vacated Plaintiff's conviction, and ordered a new trial.  *Id.* at ¶ 138.  The State of Maryland later dismissed Plaintiff's case.  *Id.* at ¶ 143.

---

[2] For the purpose of evaluating the merits of the parties' requests and positions, the Court summarizes the allegations in the Complaint and other facts presented to the Court that appear uncontested for the purpose of the discovery motions.  In resolving the disputes, the Court does not opine on the truth of any disputed allegations in the Complaint.

Plaintiff filed a petition with the State of Maryland Office of Administrative Hearings ("OAH") on June 30, 2023, pursuant to the Walter Lomax Act, "seeking compensation for the time he served in prison as a result of his wrongful conviction." *Id.* at ¶ 17. During the evidentiary hearing on Plaintiff's petition, the OAH Administrative Law Judge concluded that "Mr. Hall's conviction was secured by Defendants' coercion and misconduct to force [witnesses] to falsely incriminate him for [the victim]'s murder." *Id.* On April 18, 2024, Plaintiff filed this action, alleging violations of federal and state law. Compl., ECF 1.

### B.  Additional Details on MAIP's Representation of Mr. Hall

MAIP represented Plaintiff from 2005 through 2023, when the state courts granted Plaintiff's WAI. ECF 66-20, at 4-5; Armbrust Aff., at ¶ 4. MAIP did not represent Plaintiff in the OAH proceedings. ECF 66-20, at 5. During its representation and investigation, MAIP employed a four-lawyer team, multiple legal directors, six outside counsel, six investigators, and more than a dozen interns and volunteers. Armbrust Aff., at ¶ 12. MAIP's work included, among other things, obtaining and reviewing court and other public records, identifying and interviewing witnesses, researching legal issues, drafting investigative plans and memoranda, and communicating with Plaintiff and others concerning MAIP's representation. *Id.* at ¶ 15; ECF 66-20, at 4-5. Today, MAIP's files exist in several places, including its own servers, cloud-based networks, and hard copies in various locations. Armbrust Aff., at ¶ 17.

### C.  Procedural Posture and Discovery Disputes

On July 11, 2024, Judge Bennett issued a Scheduling Order after the parties submitted competing positions regarding the appropriate discovery schedule. *See* ECF 23. That order noted Plaintiff's agreement with the Court's proposed original scheduling order and Defendants' proposal of "significant modifications," including expert-related deadlines almost a full year later than the Court proposed. *Id.* at 2. Judge Bennett refused to extend the Rule 26(a)(2) disclosure

dates but granted a three-month extension of the original discovery deadline. *Id.* Therefore, the deadline for both fact and expert discovery was February 4, 2025. *Id.* at 3. The Rule 26(a)(2) deadlines were as follows: Plaintiff's disclosures on August 23, 2024; Defendants' disclosures on September 23, 2024; Plaintiff's rebuttal disclosures on October 7, 2024; and supplementation of disclosures and responses on October 15, 2024. *Id.* at 2.

On September 23, 2024, the deadline for their Rule 26(a)(2) disclosures, Defendants— both individual and BPD—moved to amend the Scheduling Order to continue that deadline until sixty days after the end of fact discovery. *See* ECF 52. The following day, Plaintiff moved to strike that request. ECF 53. Plaintiff noted that he complied with the deadline for his Rule 26(a)(2) disclosure—without the benefit of additional discovery the Defendants would receive— and that Defendants waited until the last minute to revisit their request that Judge Bennett rejected just two months prior. *Id.* at 1. Plaintiff also noted—and defense counsel confirmed by telephone last week—that Defendants did not make any Rule 26(a)(2) disclosures by the deadline. *Id.*

The remaining disputes concern—directly or indirectly—certain documents created or held by MAIP. Individual Defendants claim that MAIP has wrongfully refused to produce documents in response to a July 25, 2024 subpoena seeking documents obtained and created during MAIP's investigation into Plaintiff's conviction (the "MAIP File"). Mot. to Compel, ECF 66-1, at 6; Mot. to Compel Ex. 7, ECF 66-8, at 5 (Individual Defendants' subpoena rider).

On August 7, 2024, Plaintiff, on behalf of MAIP, objected in writing, citing improper service, overbreadth in time and scope, and application of attorney-client and work product privileges. Defs.' Certificate of Discovery Conference, ECF 66, at ¶ 2; Mot. to Compel, at 6-7; Mot. to Compel Exs. 9, 13, ECFs 66-10, 66-14. About a week later, a MAIP representative

notified Defendants that it joined Plaintiff's objections and intended to share the documents with Plaintiff's counsel for review. Mot. to Compel, at 7; Mot. to Compel Ex. 10, ECF 66-11, at 2-3. That same day, Defendants objected to MAIP's intent to share documents with Plaintiff's counsel and asked MAIP to hold the documents until the parties could meet and confer on an agreeable procedure. Mot. to Compel Ex. 10, at 2. On August 21, 2024, counsel for Plaintiff and MAIP and counsel for Individual Defendants conferred regarding the objections. Defs.' Certificate of Discovery Conference, at ¶ 4. At that time, Plaintiff and MAIP refused to provide a privilege log, and Plaintiff declined Individual Defendants' offer to pay for a third-party service to scan and label the MAIP File. *Id.* at ¶ 4; Mot. to Compel, at 14-15.

Failing to reach a resolution, Individual Defendants moved the Court for an order to compel on September 13, 2024. *See* ECFs 44-45 (Individual Defendants' first Motion to Compel and to Show Cause). The Court denied the motions for failure to meet and confer as required by Local Rules 104.7 and 104.8. ECFs 54-55. The filings on the pending motions demonstrate compliance with the Local Rules and that the dispute is now ripe. *See* Defs.' Certificate of Discovery Conference, at ¶ 7-12. During their first meet and confer, Plaintiff itemized the MAIP File into the following categories:

1. Documents MAIP received in response to Maryland public records requests, including requests made to [BPD] and [SAO] for their respective files.

2. Copies of pleadings that were filed with the Baltimore City Circuit Court.

3. Documents, including witness interview memoranda, provided by MAIP to [SAO]'s Conviction Integrity Unit.

4. Transcripts of interviews conducted by [SAO]'s Conviction Integrity Unit.

5. Documents produced by MAIP to [SAO] or filed with the court in conjunction with the [WAI] proceeding and pleadings filed in that proceeding.

6. MAIP internal email correspondence.

7. MAIP communications with [Plaintiff], any other counsel, or any investigators or parties acting on the behalf of counsel.

6

8. MAIP work product that has been kept confidential and not shared with third parties, such as investigative work plans, draft pleadings, or communications with experts or draft expert reports.

9. MAIP notes from or memoranda of witness interviews that have been kept confidential and not shared with third parties.

10. Affidavits executed by witnesses or statements adopted by a witness that have been kept confidential and have not been publicly filed or shared with a third party.

*Id.* at ¶ 8; Pl.'s Opp. to Mot. to Compel, ECF 66-18, at 5.  At the meeting, Plaintiff and MAIP agreed to produce Categories 1-5 but claimed privilege as to Categories 6-10.  Defs.' Certificate of Discovery Conference, at ¶ 8.  Plaintiff and MAIP offered to provide a privilege log for Categories 9-10 in exchange for Individual Defendants withdrawing their demands for categories 6-8.  *Id.*  Individual Defendants declined.  *Id.*

After Plaintiff and MAIP filed their opposition briefs, a second meet-and-confer occurred on October 11, 2024.  *Id.* at ¶ 9-10.  Plaintiff and MAIP refused to provide a privilege log and maintained their position that Categories 6-10 were overly broad and burdensome and that Individual Defendants failed to demonstrate their entitlement to those documents.  *Id.* at ¶ 10.  A third meet-and-confer occurred on October 25, with the parties reaffirming their positions and reaching the same outcome.  *Id.* at ¶ 12.  Earlier that day, MAIP produced 4,500 pages of responsive material to Categories 1-5.  *Id.*  Individual Defendants then filed the current Motion to Compel and Motion to Show Cause as to MAIP regarding MAIP's refusal to comply with Individual Defendants' demands.  ECF 66.  They filed a contemporaneous Motion for Leave to File Electronic Media—a flash drive containing an audio file referenced in their substantive motion.  ECF 67.

The latest scheduling dispute concerns fact discovery and flows in part from the dispute concerning the MAIP File.  By the time of the January 16, 2025 phone conference, Plaintiff had provided Individual Defendants with a privilege log covering Categories 9-10.  Defs.' Pre-

Conference Letter, ECF 89, at 2.  MAIP had also supplemented its initial production to Categories 1-5, bringing its total production to approximately 8,000 pages.  *See* Pl.'s Pre-Conference Letter, ECF 88, at 2.  Defendants seek a 120-day extension of the fact discovery deadline to permit time for MAIP to comply with the subpoena (if the Court grants the Motion to Compel as to MAIP), for Defendants to review the material, and for the parties to reschedule depositions that Defendants submit should occur after receipt and review of the MAIP File.  Defs.' Pre-Conference Letter, at 1-2.  Plaintiff opposes any extension of fact discovery, arguing, among other things, that Defendants fail to demonstrate good cause for such extension because Defendants have received documents sufficient to complete the depositions and are not entitled to the withheld portions of the MAIP File.  Pl.'s Pre-Conference Letter, at 1-3.

## II.    LEGAL STANDARD

### A.    Non-Party Subpoenas

Federal Rule of Civil Procedure 45 permits parties to "issue subpoenas to non parties in possession of relevant information, seeking production of 'designated documents, electronically stored information, or tangible things in that [non-party]'s possession, custody, or control.'"  *Am. Home Assurance Co. v. KBE Bldg. Corp.*, No. CCB-13-1941, 2015 WL 348292, at \*12 (D. Md. Jan. 13, 2015) (quoting Fed. R. Civ. P. 45 (a)(1)(A)(iii)).  The scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under Rule 26.  *See Papanicolas v. Project Execution & Control Consulting, LLC*, No. CBD-12-1579, 2015 WL 1242755, at \*2 (D. Md. Mar. 17, 2015) ("'[T]he scope of discovery allowed under a subpoena is the same as the scope of discovery allowed under the . . . relevancy standards set forth in Rule 26[.]'" (quoting *Singletary v. Sterling Transp. Co., Inc.*, 289 F.R.D. 237, 240-41 (E.D. Va. 2012))).

Where, as here, the discovery dispute concerns a non-party, courts exercise greater vigilance and scrutiny.  Non-party status receives "'special weight'" and "lead[s] to an even more

"demanding and sensitive" inquiry than the one governing discovery generally." *Va. Dep't of Corrs. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (quoting *In re Public Offering PLE Antitrust Litig.*, 427 F.3d 49, 53 (1st Cir. 2005)); *accord Garrity v. Governance Bd. of Carinos Charter Sch.*, No. 20-340-MV/KK, 2021 WL 3033278, at *3 (D.N.M. July 19, 2021) ("While the court has considerable discretion with regard to regulating discovery which is exchanged in a lawsuit, discovery from third-parties in particular must, under most circumstances, be closely regulated." (internal quotation marks and citation omitted)). As the Fourth Circuit explains,

> [n]onparties are "strangers" to the litigation, and since they have "no dog in [the] fight," they have "a different set of expectations" from the parties themselves. Bystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery. . . .

*Jordan*, 921 F.3d at 188-89 (internal quotation marks and citations omitted).

In tandem, Rules 26 and 45 limit the discovery allowed under a non-party subpoena in four fundamental ways, and courts may quash or modify a subpoena if the subpoena fails to limit discovery in any one of these four ways. *See Cook v. Howard*, 484 F. App'x 805, 812 (4th Cir. 2012) ("Although Rule 45(c) sets forth additional grounds on which a subpoena against a third party may be quashed, taking into consideration facts peculiar to their status as a non-party, those factors are co-extensive with the general rules governing all discovery that are set forth in Rule 26."). First, the material "sought must be 'relevant to any party's claim or defense.'" *Jordan*, 921 F.3d at 188 (quoting Fed. R. Civ. P. 26(b)(1)). A subpoena is relevant if it creates "any possibility that the [material] sought may be relevant to the claim or defense of any party." *O'Malley v. Trader Joe's East, Inc.*, No. RDB-19-3273, 2020 WL 6118841, at *3 (D. Md. Oct. 15, 2020) (citation omitted).

Second, the material cannot be privileged. Fed. R. Civ. P. 45(d)(3)(A)(iii).

Third, the discovery requested by a subpoena must "be 'proportional to the needs of the case.'" *Jordan*, 921 F.3d at 188 (quoting Fed. R. Civ. P. 26(b)(1)).  In determining whether discovery is proportional, courts consider:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Fourth, a subpoena cannot "subject[] a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).  In determining whether undue burden exists, courts must, unlike discovery requests directed at parties, adopt "[a] more demanding variant of the proportionality analysis" given that non-parties "are strangers to the litigation, . . . have no dog in the fight, [and] have a different set of expectations from the parties themselves." *Jordan*, 921 F.3d at 189 (citation omitted).  The undue burden inquiry should predominantly focus on:

> whether the benefits of discovery to the requesting party outweigh the burdens on the recipient [and involve consideration of] the requesting party's need for [the material,] . . . the dollars-and-cents costs associated with a large and demanding document production[, whether the material] is available to the requesting party from other sources[, whether the material sought] likely (not just theoretically) ha[s] marginal benefit in litigating important issues[, and whether the subpoena] is overbroad—that is, when it seeks information beyond what the requesting party reasonably requires.

*Id.* at 189-90.  The requesting party bears the burden of establishing relevance and proportionality, while the party resisting discovery bears the burden of demonstrating why discovery should not be permitted, such as privilege or undue burden.  *O'Malley*, 2020 WL 6118841, at *2; *see also Boshea Compass Mktg., Inc.*, No. ELH-21-309, 2021 WL 4425765, at *5 (D. Md. Sept. 27, 2021) ("While [the parties resisting discovery] bear the burden of proof and persuasion, the requesting party must still show why its request is relevant and proportional to discovery.").

B.  *Scheduling Orders*

It is axiomatic that "[d]istrict courts enjoy substantial discretion in managing discovery[.]"  *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 929 (4th Cir. 1995)).  Rule 16(b) provides that a scheduling order governing a case "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts."  *Potomac Elec. Power Co. v. Elec. Motor Supply, Inc.*, 190 F.R.D. 372, 375 (D. Md. 1999) (internal quotation marks and citation omitted).  "Lack of diligence and carelessness are the hallmarks of failure to meet the good cause standard."  *Innovative Therapies, Inc. v. Meents*, 302 F.R.D. 364, 383 (D. Md. 2014) (internal quotation marks and citation omitted).

## III.    ANALYSIS

For the following reasons, the Court DENIES the Motion to Compel, in part on the merits and in part as moot.  Having considered all materials submitted and not finding their inclusion or exclusion material to its decision, the Court GRANTS the Motions for Leave to file supporting materials.  The Court GRANTS IN PART the Motion to Amend as to expert-related deadlines and the Motion to Amend as to fact-related deadlines and DENIES IN PART the same motions.

A.  *The Court denies the Motion to Compel because part of the dispute is moot and the remaining requests are overbroad, not proportional, and seek protected work product.*

As explained above, the subpoena to MAIP, after some discussion, implicates ten categories of documents Individual Defendants seek.  Categories 1-5 are moot based on MAIP's agreement to produce those documents.  Categories 9-10 are moot based on the representation that Plaintiff provided a privilege log for those categories.  To the extent there are objections and

11

challenges regarding any entries on those logs, those have not been presented to the Court and are beyond the scope of the pending motions and arguments. Therefore, the Court's substantive analysis and decision below addresses only Categories 6-8.

As an initial matter, the Court finds that Mr. Hall has standing to object to the subpoena because he asserts that the MAIP File includes documents that are protected by attorney-client privilege and work product doctrine. *See Robertson v. Cartinhour*, No. AW-09-3436, 2010 WL 716221, at *1 (D. Md. Feb 23, 2010) ("A party does not have standing to challenge a subpoena issued to a non-party 'unless the party claims some personal right or privilege in the information sought by the subpoena.'" (quoting *United States v. Idema*, 118 F. App'x 740, 744 (4th Cir. 2005))); *see also Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 440 (E.D. Va. 2018) (finding that the plaintiff had standing to object to a subpoena because the plaintiff, like here, asserted protection of attorney-client privilege and work product doctrine).

        *i.  Improper service is not a basis to modify or quash the subpoena.*

Any defects in service are no longer material because Plaintiff and MAIP received the subpoena and responded to it. *See Hall v. Sullivan*, 229 F.R.D. 501, 506 (D. Md. 2005) (rejecting an improper service objection where the recipient "actually received the subpoena, and [] upon receipt, was able to object and timely file a motion to quash").

        *ii.  The subpoena is overbroad due to its time period, breadth of documents, and lack of proportionality.*

Mindful that "[b]ystanders should not be drawn into the parties' dispute without some good reason, even if they have information that falls within the scope of party discovery," the Court considers the subpoena to MAIP within the context of not only the allegations but also the representations of what has been provided, what is likely to exist, and any "undue burden" likely to fall on MAIP by complying with Individual Defendants' demands. *Jordan*, 921 F.3d at 189;

*see also Garrity*, 2021 WL 3033278, at *3 ("Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." (internal quotation marks and citation omitted)).

Plaintiff and MAIP argue that the subpoena is overbroad, not proportional to the needs of the case, and unduly burdensome. *See* MAIP's Opp. to Mot. to Compel, ECF 66-20, at 10. First, MAIP asserts that the subpoena is overbroad because it is not reasonably limited in time or scope—it spans nearly 20 years and seeks all records in MAIP's possession related to its representation of Plaintiff. *Id.* at 11. Second, MAIP maintains that Individual Defendants' request for Categories 6-10 is not proportional because MAIP agreed to produce files it received from the State's Attorney's Office and defense counsel in the 1992 trial. *Id.* at 12. MAIP avers that Individual Defendants offer no more than an unsubstantiated suspicion that the remainder of the entire MAIP File, created during the better part of two decades, may turn up something useful. *Id.* Third, MAIP deems the subpoena unduly burdensome based on the time and effort required of it, as both a non-party and a small, non-profit entity, to assemble and review all possibly responsive materials. *Id.* at 18-19. Further, MAIP notes Individual Defendants' failure to obtain the requested material from other sources and avoid imposing undue burden and expense on MAIP. *Id.* at 12-13.

Individual Defendants counter that the MAIP File contains evidence that is "highly relevant to the claims and defenses in this case[.]" Mot. to Compel, at 12. They claim that they cannot defend Plaintiff's allegations without the MAIP File. Defs.' Reply to Mot. to Compel, ECF 66-24, at 5. They emphasize that the MAIP File "contains factual statements from witnesses, including those witnesses whom Plaintiff alleges were coerced into providing

fabricated statements and trial testimony." *Id.* at 3.

As explained below, the Court agrees with Plaintiff and MAIP and finds no further response from them required.

### a. The 18-year time period in the subpoena is overbroad.

The subpoena seeks contents of the MAIP File created during an 18-year representation of Plaintiff. MAIP's representation of Plaintiff began in 2005 and ended in 2023. The Court assumes Individual Defendants seek all responsive documents within that period, as the subpoena offers no time limits or other parameters that would shorten the relevant period. Therefore, if a document falls within one of the items, the subpoena encompasses documents from any period, regardless of whether the document was created or obtained during MAIP's representation. This boundless approach indicates overbreadth. *See Michael's Fabrics, LLC v. Donegal Mut. Ins. Co.*, No. 24-1585-JRR, 2024 WL 3849529, at *2 (D. Md. Aug. 16, 2024) (finding that a subpoena subjected a non-party to undue burden because it was "not reasonably temporally limited [and] . . . not reasonably limited in scope"); *see also Theofel v. Farey-Jones*, 359 F.3d 1066, 1071-72, 1079 (9th Cir. 2004) (finding that a subpoena subjected a non-party to undue burden because it "ordered production of [documents] . . . with no limitation as to time or scope").

The Court has little trouble presuming such a period overbroad, not only based on common sense but also on the Federal Rules governing discovery. The Committee Notes on the 1993 Amendments to Rule 26 provide that:

> The obligation to provide pertinent information concerning withheld privileged materials applies only to items "otherwise discoverable." **If a broad discovery request is made—for example, for all documents of a particular type during a twenty year period**—and the responding party believes in good faith that production of documents for more than the past three years would be unduly burdensome, it should make its objection to the breadth of the request and, with

respect to the documents generated in that three year period, produce the
unprivileged documents and describe those withheld under the claim of privilege.

Amendments to Fed. Rules of Civil Procedure,146 F.R.D. 401, 639-40 (1993) (emphasis added).

The two-year difference between this case and the Committee's example does not alter the

Court's conclusion.  In some ways, the request here is broader than the one in the Committee

Note.  That example references "documents of a particular type."  *Id.* at 640.  Here, Individual

Defendants ask for, in so many words, the entire MAIP File.  The Court would have to strain to

identify what the MAIP File contains that does not fall within the subpoena's requests.

Considering the additional care exercised before embroiling a non-party in civil litigation, the

Court finds the period overbroad.

> b. *The subpoena imposes an undue burden on MAIP by demanding a significant number of irrelevant documents and seeks information not proportional to the needs of the case.*

The merits of this litigation turn on whether the Defendants concealed exculpatory

evidence and coerced witness testimony.  Compl., at ¶ 7-9.  Of course, "[r]elevance is not, on its

own, a high bar."  *Jordan*, 921 F.3d at 188.  Since 2016, the Federal Rules have combined the

low threshold of relevancy with a greater threshold of proportionality to the needs of the case.

"Proportionality requires courts to consider, among other things, 'whether the burden or expense

of the proposed discovery outweighs its likely benefit.'"  *Id.* at 188-89 (quoting Fed. R. Civ. P.

26(b)(1)).  This threshold sits even higher for demands on non-parties, to whom courts apply "[a]

more demanding variant of the proportionality analysis."  *Id.* at 189 (citing Fed. R. Civ. P.

45(d)(3)(A)(iv)).

This "more demanding analysis" proves fatal for the subpoena.  First and most important,

the documents most persuasive or impactful to the issues in this case, considering the allegations,

are those connected with Defendants' and witnesses' communications with SAO and Mr. Hall's

criminal defense counsel, Defendants' interactions with witnesses, and witness recantations. While Rule 26 does not cabin discovery to only those most persuasive or informative, MAIP's non-party status demands more than the usual Rule 26 consideration regarding what is discoverable.  In this case, the subpoena's sweep of *all* MAIP documents exceeds proportional limits.  *See Vaughan v. City of Shaker Heights*, No. 10-609, 2013 WL 4758028, at *3-5 (N.D. Ohio Sept. 4, 2013) (finding a subpoena overbroad where it asked for the entire prosecution's file when the requesting party only needed "[d]ocuments referencing communications between [the d]efendant and either the [prosecutor's office] or [the victim's attorney]" that were "clearly relevant to proving [the p]laintiff's claim that [the defendant] failed to disclose exculpatory information to the [prosecution]").

Second, as noted earlier, the subpoena is not reasonably limited in time by requesting all MAIP documents without any time limitation.  Notwithstanding other conclusions, it is worth noting that Individual Defendants' asserted grievance relies heavily on witness interviews that began in 2015.  Mot. to Compel, at 10.  If duration were the only problem with the subpoena, the Court may be able to cure the issue by modifying the requests to some period tethered closer to the time of the witness interviews.  But other problems persist.

Third, the subpoena's reach extends to irrelevant matters.  Although any of the items may include relevant documents, the subpoena requires MAIP to provide every document that it possesses relating to Plaintiff and his now-vacated 1992 conviction.  In that way, for reasons beyond the duration of the responsive period, this request stretches "beyond what [Individual Defendants] reasonably require[.]"  *Jordan*, 921 F.3d at 190; *see also Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, No. 12-27, 2014 WL 6686727, at *4 (M.D.N.C. Nov. 26, 2014) ("[C]ourts have frequently concluded that a subpoena for an entire file constitutes an

overbroad request where that file likely contains both relevant and irrelevant information."); *In re Subpoena Duces Tecum to AOL, LLC*, 550 F. Supp. 2d 606, 612 (E.D. Va. 2008) (finding a subpoena "overbroad because it [did] not limit the [documents] requested to those containing subject matter relevant to the underlying action").[3]

Fourth, much of the non-privileged material within the scope of the requests may be obtained from other sources. MAIP and SAO's responses to Individual Defendants' subpoena provide substantial material that Individual Defendants seek or are relevant and proportional to the issues in this case—that is, whether Defendants concealed exculpatory evidence from the SAO or Plaintiff's criminal defense counsel. Pl.'s Opp to Mot. to Compel, at 9-10; *see Garcia v. Quevedo*, No. 20-1960-DCN, 2022 WL 1037090, at *3 (D.S.C. Apr. 6, 2022) (finding a subpoena "unduly burdensome and not proportional to the needs of th[e] case" because "the subpoenaed documents, or their substantial equivalent, [were] already [] produced"). Relevant information outside of those productions may be obtained from witnesses at issue, through deposition, for example. It does not appear that Individual Defendants noticed depositions of or otherwise explored all relevant witnesses whose statements may be at issue, including Ms. Hill or Mr. Patterson, before seeking these documents. Individual Defendants argue that such efforts would be better aided and informed by the requested documents. While the Federal Rules and the Court prefer efficiency in litigation, the dispute about this matter "does not justify delay in

---

[3] While moot for the reasons noted above, several items sought by the subpoena reflect their breadth consistent with this authority. For example, Item 1 requests that MAIP provide "[t]he file that [MAIP] maintained throughout the course of [its] representation of [Plaintiff] pertaining to his conviction." Mot. to Compel Ex. 7, at ¶ 1. Item 1 likely includes relevant documents yet seeks information beyond whether Defendants concealed exculpatory evidence and coerced witness testimony. Item 5 is similarly overbroad: although it may capture relevant witness statements, it seeks information beyond the parties' claims or defenses. These, along with Items 2-4 and 6-7, are the types of overbroad requests that the Federal Rules disfavor.

taking any other discovery."  D. Md. Loc. R. 104.3; *see also Jayne H. Lee, Inc. v. Flagstaff Indus. Corp.*, 173 F.R.D. 651, 657 (D. Md. 1997).  At bottom, before receiving responses, it does not appear that Individual Defendants investigated these matters in any meaningful way separate from investigations already performed in connection with either the original prosecution or MAIP's efforts.

For these reasons, Categories 6-7 are overbroad.  Judicial modification could cure most of the issues addressed above.  Were they the only basis for not responding, the Court would pursue that route to resolve the matter.  *See Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Generally, modification of a subpoena is preferable to quashing it outright.").  But a greater issue alleviates the need to do so.

### iii.   *Plaintiff and MAIP have not waived their right to assert privilege.*

Individual Defendants argue that Plaintiff and MAIP waived their privilege claim under two theories.  First, Individual Defendants argue that Plaintiff placed the MAIP File at issue by (1) alleging in bad faith the misconduct in the Complaint and his factual innocence and (2) now denying access to the information Plaintiff and MAIP possess.  Mot. to Compel, at 12-13.  Second, Individual Defendants argue that failure to provide a privilege log constitutes waiver.  Defs.' Reply to Mot. to Compel, at 5-6.  They also request the Court conduct an in-camera review to assess Plaintiff and MAIP's work product claims.  *Id.* at 7-8.

Plaintiff and MAIP argue no waiver occurred because Plaintiff has not relied on any privileged evidence to prove his claim.  Pl.'s Opp. to Mot. to Compel, at 7-9; MAIP's Opp. to Mot. to Compel, at 17-18.  Furthermore, they maintain that the nature of MAIP's relationship with Plaintiff, their activities on his behalf, and the language of the subpoena demonstrate the

application of attorney-client privilege and work product doctrine.[4] *Ibid.*

> a. *Filing suit after counsel's investigation does not place the interviews during such investigation "at issue" for the purpose of privilege waiver.*

The Court finds the "at issue" doctrine inapplicable.  The doctrine of "at-issue" waiver applies only "when the party puts "at issue" some fact which necessarily involves an examination of the attorney's advice [or communication] to the client."  *United States v. White*, 944 F. Supp. 2d 454, 459 (D.S.C. 2013) (citation omitted); *accord Costabile v. Westchester, N.Y.*, 254 F.R.D. 160, 167 (S.D.N.Y. 2008).  The purpose of the doctrine of "at-issue" waiver is to "prohibit[] a party from using information as a sword to prove its case while shielding the information from disclosure by asserting [privilege]."  *Carroll Co. v. Sherwin-Williams*, No. WMN-11-1700, 2012 WL 4846167, at *2 (D. Md. Oct. 10, 2012) (citing *Ehrlich v. Grove*, 914 A.2d 783, 798 n.14 (Md. 2007)).  Filing suit is not, on its own, sufficient to place protected information at issue.  *In re Hillsborough*, 176 B.R. 223, 239 (M.D. Fla. 1994); *see also Costabile*, 254 F.R.D. at 161 ("[C]laiming that the events alleged in the . . . [c]omplaint actually occurred . . . [cannot] possibly [] put [a privileged document] 'at issue.'").

Without hesitation, the Court finds that filing suit after investigating facts underlying the allegations falls far short of waiver.  Taken to its logical conclusion, Individual Defendants' position compels finding that hiring an attorney before filing suit and then filing suit based on what that attorney finds amounts to waiver (at the very least, whenever the alleged wrongdoing occurred decades ago).  The Court is unaware of authority supporting this conclusion and sees no reason to endorse an application so broad that would swallow the general rule on privilege.

---

[4] Finding privilege assertions preserved in general and work product applicable, the Court does not address attorney-client privilege.

"[U]nless plaintiff[] intend[s] to rely on the [MAIP] investigator's findings by calling him as a witness," Plaintiff "ha[s] not put [a privileged document] 'at issue.'" *Costabile*, 254 F.R.D. at 167. The privilege doctrines are critical to our adversarial system and will not be cast aside in a cavalier manner.

> b. *The privilege log prerequisite may be excused because the basis for privilege is clear from the face of the subpoena and arguments, and Plaintiff and MAIP did not act with blatant disregard for the applicable rules.*

It is true that failure to provide a privilege log "may constitute a forfeiture of any claims of privilege." *Mezu v. Morgan State Univ.*, 269 F.R.D. 565, 577 (D. Md. 2010). In most circumstances, a privilege log is necessary to proper invocation. *See Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 267 (D. Md. 2008) (describing the multi-step process for "properly assert[ing]" privilege through a privilege log); *In re Marriott Int'l Customer Data Sec. Breach Litig.*, No. 19-MD-2879, 2020 WL 5525043, at *3 (D. Md. Sept. 14, 2020) (noting that *Victor Stanley* "defined with precision the obligations" imposed by the Federal Rules of Civil Procedure when asserting privilege). The Court's Local Rules reflect this expectation and general practice. *See* D. Md. Loc. R. Appendix A, Guideline 10(d) (setting forth information required when asserting privilege).

But a privilege log is not always a prerequisite. In limited circumstances, a proponent may present a valid privilege claim without it. The Court, like many others, has recognized that because general allegations of privilege are insufficient, a proponent of the privilege must provide enough information to determine privilege. *See Victor Stanley*, 250 F.R.D. at 266-67 (collecting cases). The proponent may satisfy this burden without a privilege log where the challenged request is, by its terms, overbroad or necessarily seeking privileged information. The court in *Garrity* explained that "a document-by-document privilege log is not always necessary

20

when a party has, in good faith, asserted other non-privilege objections to the discoverability of a whole range of materials."  2021 WL 3033278, at *5 (internal quotation marks, citations, and alterations omitted); *accord Williams v. Dave Wright BGH, Inc.*, No. 19-300-SMR-SBJ, 2020 WL 12968369, at *6 (S.D. Iowa Dec. 23, 2020) ("However, while under other circumstances a privilege log of each document at issue may be useful or even required by the Court to assess claims of privilege, Rule 45(e)(2) does not mandate such a log must be provided in all cases." (citation omitted)).

The Eleventh Circuit found no abuse of discretion in quashing a subpoena without a privilege log where it was "apparent from the face of the subpoena" that relevant responsive information fell within a privilege or was readily obtainable from other sources. *Jordan v. Comm'r, Miss. Dep't of Corrs.*, 947 F.3d 1322, 1328 n.3 (11th Cir. 2020).  This careful approach furthers the Federal Rules' preference for streamlined discovery and avoidance of unnecessary costs.  *See generally* Fed. R. Civ. P. 1.  "Otherwise, any objection to the scope of a discovery demand would be rendered moot because interposing that objection would trigger the very burdensome obligation to prepare a privilege log that the objection would be intended to avoid." *In re Application for an Order Pursuant to 28 U.S.C. § 1782 to Conduct Discovery for Use in a Foreign Proceeding*, 286 F. Supp. 3d 1, 7 (D.D.C. 2017).

Agreeing with this practical approach, the Court finds instructive cases involving attempts to obtain an attorney's file and the proponent's description "in a manner that . . . will enable the parties to assess the claim" without undue burden.  Fed. R. Civ. P. 45(e)(2)(ii).  In *Garrity*, the court explained that "by their very nature significant portions of the documents [the p]laintiff seeks are likely to be attorney-client privileged and/or protected attorney work product. For these reasons, the [c]ourt declines to find that [the m]ovants have waived the attorney-client

privilege or attorney work-product doctrine with respect to the subpoenaed documents by failing to submit a privilege log at this juncture."  2021 WL 3033278, at *6.  Even before the 2016 amendments emphasizing the importance of proportionality, courts exercised caution in requiring a privilege log before considering objections based on categorical overbreadth and disclosure of privileged materials.  For example, in *Xcentric Ventures, L.L.C. v. Borodkin*, the court excused the privilege log requirement where "much of the information sought by [the plaintiff] in its remaining three [r]equests would qualify as work product" under applicable state law.  934 F. Supp. 2d 1125, 1147 (D. Ariz. 2013), *aff'd sub nom. Xcentric Ventures, LLC v. Borodkin*, 798 F.3d 1201 (9th Cir. 2015).

In a case such as this one, where undisputed facts reflect counsel's relationship to a client and preparation of materials in anticipation of litigation, requiring a privilege log first would impose the burden of "laborious privilege review" that would "far exceed any likely benefit, in terms of relevant documents that for some reason escape privilege or work product protection." *Aetna Inc. v. Mednax, Inc.*, No. 18-CV-02217-WB, 2019 WL 6250850, at *7 (E.D. Pa. Nov. 22, 2019).  The Court accepts Plaintiff's and MAIP's representations as sufficient to forego their production of a privilege log as to Categories 6-8.  An MAIP representative submitted a sworn statement summarizing MAIP's involvement with Plaintiff, the various individuals involved, various locations of files, and the burden imposed on the small MAIP workforce to review the materials.  These representations—and the lack of disputes about their veracity—support the Court's application of an exception to the privilege log.  *See Williams*, 2020 WL 12968369, at *6 (crediting the parties' arguments and "sworn statements" of an attorney subject to a non-party subpoena as sufficient "to meet the burden to establish the applicability of the attorney-client

22

privilege and work product protection under the circumstances of this particular case"). The reasoning of *Williams* is instructive:

> [N]o grounds have been presented to disregard or discount [the] attorney['s] representations as to the scope and time required to conduct a search and respond to [the p]laintiffs' subpoena with a detailed privilege log of each potential responsive document. Given the sworn statements submitted to this [c]ourt, requiring the Law Group as a non-party to provide a detailed privilege log in response to [the p]laintiffs' subpoena not only places an undue burden on the Law Group but is unnecessary to establish the application of the attorney-client privilege and work product protection to those materials specifically sought by the subpoena and being withheld by the Law Group pursuant to Rule 45(e)(2)(A)."

*Id.*

Even if the persuasive authority on this point was insufficient, the Court would still rely on the authority in this District declining to find waiver absent compelling indicia of dilatory, unreasonable, or otherwise intentional avoidance of the Federal Rules' requirements. *See Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 743 (D. Md. 2011) (no waiver where the defendants objected to discovery on confidentiality grounds, the Court directed the defendants to instead object on privilege grounds and particularize its claims, and the defendants specified their privilege claims five months after their initial objection); *LES Eng'g, Inc. v. Danieli Corus, Tech. Servs., B.V.*, No. WMN-08-2115, 2010 WL 11549896, at *1 (D. Md. Feb. 2, 2010) (no waiver despite production of an untimely privilege log after non-particularized privilege objections because the Court did "not detect any blatant disregard of applicable rules").[5] The Court finds no evidence of "any blatant disregard of applicable rules."

---

[5] In *Bost v. Wexford Health Sources*, a jurist in this District found privilege waived as to mental health records where the plaintiff's claims for emotional damages placed their contents at issue and the plaintiff claimed the records were "potentially privileged" under various doctrines without specific explanation. No. ELH-15-3278, 2017 WL 11453989, at *2 (D. Md. Jan. 31, 2017). For several reasons, that case differs from this one. One, the "at issue" conclusion is clearer in that scenario where the nature of requested damages necessarily intersected with the subject matter of the contested records. Two, the assertions of various "potential" privilege applications in that case strike the Court as more akin to the general assertions long deemed

On the contrary, Plaintiff and MAIP timely asserted privilege in their objections to the subpoena. They conferred with Individual Defendants to resolve and narrow their disputes concerning the subpoena. And, with respect to Categories 9-10, Plaintiff provided a privilege log.

>    *iv.   Categories 6-8 seek materials protected by the work product doctrine.*

"The [work product] doctrine creates a 'protected zone' surrounding an attorney's preparation of a client's case which extends to information the attorney, or her agent, assembles in anticipation of litigation, as well as the deliberative process she uses to separate relevant from irrelevant facts, determine strategy and legal theories." *Nutramax Labs. Inc v. Twin Labs. Inc.*, 183 F.R.D. 458, 462 (D. Md. 1998).

Based on the parties' representations, MAIP's role as Plaintiff's counsel in anticipation of litigation is clear. MAIP's relationship with Plaintiff centered on an investigation for the purpose of building a case to challenge his conviction via litigation—the Writ of Actual Innocence. Also clear, then, is the conclusion that MAIP collected and generated material in the MAIP File in furtherance of its eventual challenge to Plaintiff's now-vacated 1992 conviction. MAIP's internal email correspondence, absent some showing otherwise, lies squarely within the concept of work product. The same is true of communications with Plaintiff or other lawyers and investigators working on MAIP's behalf. There can be no doubt that Category 8 seeks work product by its own terms, invoking that phrase and providing examples: "investigative work plans, draft pleadings, or communications with experts or draft expert reports." This describes quintessential work product.

---

insufficient. Three, the posture there involved an unusual "twist," as the Court described it: *after* notice from the defendant and production by the plaintiff's healthcare provider, the plaintiff sought a protective order requiring the defendant to provide the documents to plaintiff for a privilege review.

The fact that the WAI did not occur for more than 15 years after Plaintiff reached out is immaterial.  "Litigation need not necessarily be imminent as long as the primary motivating purpose behind the creation of the document[s] was to aid in possible future litigation."  *Anaya v. CBS Broad., Inc.*, 251 F.R.D. 645, 651 (D.N.M. 2007).  Defendants offer no reason to conclude that MAIP was not counsel or had some role other than working toward the eventual challenge to Plaintiff's now-vacated conviction.

The existence of work product, in general, does not end the matter.  As the parties recognize, not all work product is protected from further inquiry.  The discoverability of work product depends on several factors.  The first is the threshold issue of what type of work product is at issue.  The doctrine recognizes two types of work product.  As the Fourth Circuit explained:

> We afford greater protection to opinion work product than to fact work product. Fact work product is a "transaction of the factual events involved" and may be obtained upon a mere "showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship." *In re Grand Jury Proceedings, John Doe*, 102 F.3d 748, 750 (4th Cir. 1996) (quoting *In re Grand Jury Proceedings, Thursday Special Grand Jury Sept. Term, 1991*, 33 F.3d 342, 348 (4th Cir. 1994)). Opinion work product, on the other hand, "represents the actual thoughts and impressions of the attorney," and it is "more scrupulously protected." *Id.* "[O]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances." *In re John Doe*, 662 F.2d 1073, 1080 (4th Cir. 1981) (quoting *In re Murphy*, 560 F.2d 326, 336 (8th Cir. 1977)).

*In re Grand Jury Subpoena*, 870 F.3d 312, 316 (4th Cir. 2017).

Categories 6-8 are so broad, as noted above, that they necessarily include opinion work product.[6]  *See Xcentric Ventures*, 934 F. Supp. 2d at 1147 ("[T]here does not appear to be anything in [r]equests 1 and 2 that would be relevant to [the malicious prosecution claim] and yet not covered by the attorney-client privilege or attorney work product doctrine.").  Moreover,

---

[6] As Plaintiff and MAIP note, only Categories 9-10 articulate a subset of the MAIP work product sought.

Individual Defendants appear, by their own admission and advocacy, focused on opinion work product. The thrust of their demands for the MAIP File and arguments supporting their motion is to access information about witness interviews and statements—their contents, timing, etc.—during the MAIP investigation. That demand flies in the face of the law of this circuit defining quintessential opinion work product. *In re Grand Jury Subpoena*, 870 F.3d at 317 ("In our view, *Upjohn* and *Hickman* make clear that a lawyer's recollection of a witness interview constitutes opinion work product entitled to heightened protections. It does not matter whether an attorney draws on her memories, as opposed to written notes, in recalling what was said; the opinion-work-product privilege offers increased protection to both sources because both require disclosure of the attorney's mental processes." (citations omitted)).

Individual Defendants persist in their view that they satisfy the exception to work product privilege, suggesting an imbalance in their ability to defend their claims. They argue that they have a substantial need for the MAIP File's contents and an inability to secure a "substantial equivalent without undue hardship." Mot. to Compel, at 10-11. For example, they suggest that information in the MAIP File regarding witness interviews bears on the veracity of Plaintiff's allegations (and, naturally, Defendants' counternarrative). *Id.* at 11. Individual Defendants contend that a substantial equivalent is unavailable because the interviews—which occurred ten years ago—were closer in time to the events in question and more likely to be recalled at that time than now, more than thirty years after the murder central to the 1992 trial. *Id.* These contentions may be true, given potential for memory to fade over time and the reality that life is temporary. However, they do not displace the work product protection afforded to the MAIP File. The "substantial need" and "undue hardship" considerations provide exceptional access to fact work product, not opinion work product. *In re Grand Jury Subpoena*, 870 F.3d at 316.

Perhaps aware that they cannot pierce the armor protecting opinion work product, Individual Defendants argue that memorializing facts from witnesses transforms a document from opinion work product to fact work product.  Mot. to Compel, at 12.  Not so.  Again, *In re Grand Jury Subpoena* settles the matter:

> As Justice Jackson explained in *Hickman*, 'Even if [an attorney's] recollection were perfect, the statement would be his language permeated with his inferences.' For most lawyers, imperfect recitations from memory of what a witness said would inevitably reveal what the attorney *deemed* important enough to remember. Accordingly, we draw a line between asking an attorney to divulge facts—either noticed by or communicated to her—and (as the government seeks to do here) asking an attorney to recall generally what was said in an interview. While it may be characterized as a "fact," the latter requires the attorney to expose her mental processes by revealing which witness statements she deemed important enough to commit to memory and is therefore opinion work product.

870 F.3d at 317–18 (quoting *Hickman v. Taylor*, 329 U.S. 495, 516–17 (1947) (Jackson, J., concurring)) (alterations and emphasis in original).

Absent application of a limited exception not relevant here,[7] the Court will not erode the substantial protection afforded to opinion work product.

Even if the MAIP File were not opinion work product—a conclusion finding no support in law or the record—the Court would not find that Individual Defendants present the showing required to discover fact work product.  The Court is unconvinced there is a "substantial need" for MAIP's internal files on the primary issues in this case: (i) the veracity of 1992 trial testimony and (ii) whether Defendants acted unlawfully in the procurement and presentation of such testimony.  Those concerns can be informed by documents from the original trial as well as proceedings in the last five years before OAH and the Circuit Court for Baltimore City.  There is no substantial need for the attorney's notes on a witness's statement when the statements and

---

[7] As explained in *In re Grand Jury Subpoena*, the crime-fraud exception may pierce the protection afforded to opinion work product.

subsequent recantations are available and in the public record.  Nor do I find an inability to secure the substantial equivalent of the materials without undue hardship.  Individual Defendants are free to depose the witnesses and investigate other leads, just as MAIP had to do (with even less of a record at the time; for example, no hearing and findings by other tribunals on the issue of witness credibility since any direct appeal from the conviction).  Individual Defendants' filings indicate that they have identified at least some of those witnesses without the MAIP File and planned to depose them.  There is no undue hardship in deposing an individual without the notes of an adverse party's counsel's interview of that witness.  Otherwise, this exception would swallow the rule and require disclosure of counsel's pre-litigation interviews with witnesses.  Furthermore, the Court is unconvinced that the age of the interviews aids Individual Defendants' position.  The interviews with MAIP occurred closer in time to the events but still post-dated the events by about 25 years.  To the extent there are concerns about recollection and memory, Defendants can rely on records and transcripts from the original trial and the conviction challenges.  Therefore, even if Categories 6-8 were aimed at materials that were not opinion work product, Defendants do not satisfy their burden to invade the province of work product.

For these reasons, the Court finds that Categories 6-8 are protected from disclosure based on the work product doctrine.  "Even assuming that some documents are marginally relevant, the subpoenas force the subject attorneys to comb through their files and compile privilege logs to safeguard their work product and their clients' confidences."  *Ford v. GEICO*, No. 14-180-MW/GRJ, 2015 WL 11109504, at *2 (N.D. Fla. Feb. 3, 2015) (internal quotation marks and citations omitted).  "Because such a demand fails to avoid imposing undue burden or expense on" MAIP and Plaintiffs, the Motion to Compel is denied as to those categories.  *Id*. (quashing a subpoena seeking an attorney's file); *see also Xcentric Ventures*, 934 F. Supp. 2d at 1147

28

(quashing a subpoena where the court "cannot see anything that [the plaintiff] requests in [r]equests 1 and 2 as falling within the category of relevant and also non-privileged"); *Dell Inc. v. DeCosta*, 233 F. Supp. 3d 1, 3–4 (D.D.C. 2017) (narrowing a subpoena where "most" of the responsive documents the defendant "could reasonably be expected to 'possess'" were privileged or otherwise protected and preparing a privilege log "would impose an undue and disproportionate burden").

Because the other categories have been addressed by either substantive responses (Categories 1-5) or a privilege log (Categories 9-10), Defendants' Motion to Compel is otherwise denied as moot.

### B. *Individual Defendants' Motion to Show Cause is denied.*

MAIP's timely objection defeats any suggestion that the Court require it to show cause for failure to respond to Individual Defendants' satisfaction. MAIP argues that it satisfied its obligations by timely objecting to the Subpoena and agreeing to produce responsive documents. MAIP's Opp. to Mot. to Compel, at 9. Individual Defendants do not respond to this assertion. The Federal Rules permit courts to hold in contempt a person who fails to object to a subpoena "before the earlier of the time specified for compliance or 14 days after the subpoena is served" and lacks "adequate excuse to obey the subpoena." Fed. R. Civ. P. 45(d)(2)(B), (g). Adequate excuses include timely objections. *Prowess, Inc. v. Raysearch Labs. AB*, No. WDQ-11-1357, 2013 WL 247531, at *5 n.9 (D. Md. Jan. 18, 2013); *In re Rule 45 Subpoena Issued to Robert K. Kochan*, No. 07-MC-44-BR, 2007 WL 4208555, at *3 (E.D.N.C. Nov. 26, 2007). Plaintiff and MAIP objected on a non-frivolous basis within 14 days of service.[8] Therefore, an adequate

---

[8] To the extent Individual Defendants contend that the objection is untimely, that is rejected. *See Big Picture Loans,* 303 F. Supp. 3d at 441 ("Untimely objections may, however, be considered in unusual circumstances and for good cause shown, including where counsel for the nonparty and

excuse exists.

*C. Individual Defendants' Motions for Leave to File supporting materials are granted.*

Individual Defendants' first Motion for Leave seeks to file electronic media: a recording of a call from a carceral facility.  The parties reference the content of this call in their submissions.  Without objection or other reason this is improper, the Motion is GRANTED.

Defendants' second Motion for Leave seeks to supplement the record with additional support for their Motion to Compel.  Plaintiff opposes for several reasons that can be distilled to (1) improper procedure and (2) the motion being a vehicle to argue issues that are moot or have otherwise been fully briefed.  ECF 85, at 5-7.  The Court does not adopt the procedural argument because it credits Plaintiff's second argument.  That is, this is not a separate discovery dispute that requires strict compliance with the informal discovery procedures.  Rather, it is additional information in support of Individual Defendants' Motion to Compel filed after compliance with the Court's meet-and-confer requirements.  In some ways, Individual Defendants' submission resembles a surreply, which is disfavored absent the leave of court they now seek.  D. Md. Loc. R. 105.2.  The Court considered the contents of Individual Defendants' submission, as well as the opposition thereto, in resolving the substantive discovery disputes.  Notwithstanding that the additional materials do not alter the outcome, the Court GRANTS the Motion.

*D. The Court grants in part the Motions to Amend the scheduling order.*

Taken together, Defendants' scheduling proposals seek a 120-day extension for fact discovery and a Rule 26(a)(2) expert disclosure deadline 60 days from the close of fact discovery (regardless of whether the Court extends fact discovery to the date they seek).  *See* ECFs 52, 89.

---

for the subpoenaing party were in contact with respect to the nonparty's compliance prior to the time the nonparty challenged the subpoena." (internal quotation marks and citation omitted)).

Defendants claim they need additional time for depositions and reviewing anticipated document productions related to the Motion to Compel.  Mr. Hall opposes extension of either deadline, contending that Defendants lack good cause to adjust the deadlines set by Judge Bennett and followed by Plaintiff in pursuing discovery.  To that latter point, Plaintiff's counsel contrasts their adherence to expert disclosure deadlines and scheduling of all desired depositions within Judge Bennett's parameters with Defendants' failure to disclose expert materials as directed and failure to notice their desired depositions in time to complete them before the current February 4, 2025 discovery deadline.

In accordance with Rule 16(b), the Court finds that the pendency and resolution of Individual Defendants' Motion to Compel contributes to good cause justifying the extension of fact discovery.  Defendants represent that they proceeded with certain discovery while waiting for the Court's decision.  Indeed, the parties' exchange of information rendered moot most of the requests at issue in the Motion to Compel.  The parties waited for the Court's ruling to see whether additional documents would need to be produced and reviewed in connection with witness depositions.  Now that the parties have their answer, they may proceed to those final depositions and other matters with the documents and written discovery they have in hand. Because the Court is not ordering Plaintiff and MAIP to disclose additional files that may require defense counsel's review, the parties should be able to schedule and complete the depositions much sooner than six months after the current deadline.  The Court will GRANT in part the request to extend fact discovery but only for an additional 60 days, to April 4, 2025.

Turning to Rule 26(a)(2) expert disclosures, the Court denies Defendants' request to delay such disclosures until after fact discovery.  Defendants sought additional time so that their expert(s) may incorporate into any reports the MAIP documents subject to the Motion to Compel

as well as deposition testimony.  This is not a sufficient basis in this circumstance for multiple reasons.  First, as noted above, Plaintiff and MAIP need not produce any documents in Categories 6-8.  The response to the subpoena is, as far as the Court is aware on this record, complete.  Second, the July 2024 Scheduling Order contemplated Rule 26(a)(2) disclosures before the close of discovery.  While many cases in this District have structured disclosures in the manner Defendants propose,[9] the Court does not find the requested delay necessary.  A substantial part of this conclusion rests on information divulged during the January 16, 2025 conference call.  On the September 23, 2024 disclosure date, Defendants sought an extension to the deadline.  Yet they have not issued expert disclosures in the four months since.  Not only that, counsel's comments indicate that defense experts have not prepared a substantial draft of their reports or other materials.  This explanation came in response to the Court's suggestion that Defendants' Rule 26(a)(2) disclosures occur promptly, no later than the end of this month.  Counsel urged that 45-60 days would be better because Defendants were waiting to receive all documents and testimony before working up their reports.  Whatever cost benefits there are to this approach, Defendants' apparent inaction on the disclosures and accompanying reports in this case are insufficient to justify the extension they seek.

Mindful of earlier emphasis on efficiencies and minimizing discovery costs, the Court also considers the expectation that counsel make reasonable efforts to follow scheduling orders.  As Judge Grimm notes, a scheduling order is not "a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."  *Potomac Elec.*, 190 F.R.D. at 375-76.

---

[9] *See Morgan v. Prince George's Cnty., Md.*, No. AW-09-1584, 2010 WL 2891700, at *2 (D. Md. July 20, 2010); *Cook v. UBS Fin. Servs., Inc.*, No. PJM-06-0803, 2007 WL 9782557, at *5 (D. Md. Nov. 29, 2007); *Patient First Corp. v. Patients 1st Med. Equip. Co.*, No. DKC-07-0729, 2007 WL 9782590, at *5-6 (D. Md. Sept. 11, 2007).

The absence of substantial activity toward expert disclosures before the close of discovery puts Defendants on shaky ground in assessing whether they acted with the diligence required to amend an order based on good cause. *See Pinnacle Advisory Grp., Inc. v. Krone*, No. ELH-19-2988, 2021 WL 1909604, at *3 (D. Md. May 12, 2021) (noting that the "touchstone" of "good cause" is "diligence"). By their own admission, defense counsel chose the strategy of not putting experts to work and incurring those costs without some indication from the Court that the disclosure deadline would be extended (and, thus, they were not paying an expert who would be excluded for untimely disclosure). The flipside to this strategy is that incurring those costs may demonstrate diligence and efforts to meet the governing schedule. Of course, the parties have express deadlines to supplement their disclosures as well as a continuing duty to supplement. *See* Fed. R. Civ. P. 26(a)(2)(E). Perhaps counsel should have considered this course. Instead, Plaintiff's argument that Defendants acted without diligence becomes more plausible.[10]

Nonetheless, and without condoning Defendants' strategy towards expert preparations, the Court will extend Defendants' Rule 26(a)(2) disclosure deadline (which, technically, long expired). The relevant inquiry does not end with good cause; the Court also considers the practical effect of a denial of the requested relief and extension—exclusion of expert testimony. *Potomac Elec.*, 190 F.R.D. at 376-77. That loss of evidence, as Plaintiff's counsel aptly

---

[10] This discussion and conclusion must be understood within the context of this case, where, for reasons identified above when discussing substantial hardship, the likely issues relevant to the opinions can be explored, perhaps fully, without the disputed materials. The value of MAIP interviews is low where the issues here concern questions of alleged witness coercion and the parties have access to witness statements from both the underlying trial and post-conviction proceedings. In that way, this context differs greatly from, for example, personal injury cases where medical expert opinions rely heavily on receipt of medical records and it would be impractical, if not impossible, to draft expert opinions until receiving such information. The Court's conclusions and expressions on this diligence issue should not be read as broadly applicable to every case involving expert discovery (or, conversely, as limited to only this set of facts).

recognized, is one of many perils a party risks in failing to demonstrate good cause for amending a scheduling order.  Yet, this is a drastic consequence the Court imposes only after careful consideration.  The Court must balance four factors in determining whether to exclude expert testimony: "1) the reason for failing to name the witness, 2) the importance of the testimony, 3) potential prejudice in allowing the testimony, and 4) the availability of a continuance to cure such prejudice."  *Id.* at 377; *see also Sullivan v. Glock*, 175 F.R.D. 497, 506-07 (D. Md. 1997).

The conclusions here align with those in *Potomac Electric*.  First, as explained above, Individual Defendants' reason for failing to name their witness is not compelling; the Court emphasizes the total, rather than incomplete, disclosure and the lack of other disclosure that conveys the required information.  *See Sullivan*, 175 F.R.D. at 507 (providing examples of considerations informing this factor).  Second, the expert testimony—though not described in detail—appears to be important to Individual Defendants' ability to rebut the allegations regarding their involvement in the 1992 trial.  Third, "[t]here is no question that the late designation" of an expert inconveniences Plaintiff and may require him "to retool" his case strategy.  *Potomac Elec.*, 190 F.R.D. at 377.  The fourth factor tips the scale further in favor of an extension:  there being no trial date, a continuance may cure the prejudice.  *Id.*; *see also Sullivan*, 175 F.R.D. at 507-08 (noting that a continuance is "far more palatable" a remedy where a late disclosure "surfaces months before trial" rather than on the eve of or during trial).

As to Defendants' other extension request, the Court grants the extension request only in part.  The continuance necessary to address the disclosure need not be lengthy.  Non-expert document discovery appears complete, and the parties had several fact depositions planned before the close of the previously imposed deadline.  Also, the age and health of Mr. Hall and potential witnesses favor a speedier conclusion than Individual Defendants seek.  The Court is

mindful that a longer continuance risks both rewarding the party that failed to make *any*, rather than incomplete, disclosure and suggesting that continuances are always available in lieu of exclusion. *See Potomac Elec.*, 190 F.R.D. at 378; *Sullivan*, 175 F.R.D. at 508. As announced at the end of the conference call, Defendants must make Rule 26(a)(2) disclosures within thirty days of the conference call—that is, no later than February 17, 2025. Because of these extensions, the Court will adjust other dates, consistent with those provided to the parties on the conference call, in a separate order.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds good cause to extend the discovery deadlines; finds the subpoena to MAIP overbroad and proportional; finds the remaining materials within the subpoena's scope privileged; and finds no reason to impose sanctions on MAIP or Plaintiff for failure to produce privileged materials. Accordingly, the Court DENIES the Motion to Compel. The Court GRANTS the Motions for Leave to File supporting materials. The Court GRANTS IN PART the Motion to Amend as to expert-related deadlines and the Motion to Amend as to fact-related deadlines and DENIES IN PART the same. The Court DENIES the Motion to Strike.

A separate order consistent with this opinion will issue.


Date: February 13, 2025

_____
             /s/
Charles D. Austin
United States Magistrate Judge