## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY HALL, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-1137 |
| BALTIMORE POLICE DEPARTMENT, DONALD LICATO, FRANK BARLOW, and THE ESTATE OF JOHN BARRICK, | * * | |
| *Defendants.* | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM OPINION</u>

This civil rights case arises from the investigation, conviction, and subsequent imprisonment of Plaintiff Anthony Hall ("Plaintiff" or "Hall"), who served more than twenty-five years in state prison and six years on parole after being convicted in Circuit Court for Baltimore City of second-degree murder. (ECF No. 1 ¶¶ 2–3.)[1] After years of Hall maintaining his innocence, that court, in March of 2023, granted his Petition for Writ of Actual Innocence. (*Id.* ¶¶ 13–15.) In April 2023, the State of Maryland dismissed the criminal case against him. (*Id.* ¶ 16.) Hall now brings this action against Defendants Baltimore Police Department ("BPD") and three former BPD employees—Donald Licato, Frank Barlow, and the Estate of John Barrick[2] (collectively, the "Officer Defendants)—alleging various violations

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated. Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

[2] Plaintiff's Complaint names the "Estate of John Barrick" as a Defendant, as John Barrick passed away on November 4, 2023. (ECF No. 1 ¶ 2 n.1.)

of his constitutional rights and state law. (*Id.* ¶¶ 171–222.) Hall claims that BPD and the Officer Defendants' illegal actions led to his wrongful conviction and subsequent incarceration. (*Id.*)

Instantly before the Court is the Defendants' Joint Motion to Bifurcate and Stay Discovery (ECF No. 28), which is fully briefed (ECF Nos. 36; 43) and remains pending on the Court's docket.[3] The parties' submissions have been reviewed and no hearing is necessary. Loc. R. 105.6 (D. Md. 2023). This Court has on several occasions noted that cases that contain claims of wrongful conviction and subsequent incarceration are appropriate candidates for bifurcation. Indeed, this Court has previously ruled that bifurcation is appropriate in such cases.[4] For the reasons that follow, Defendants' Joint Motion to Bifurcate and Stay Discovery (ECF No. 28) is GRANTED.

## BACKGROUND

At approximately 10:30 PM on July 13, 1991, Gerard Dorsey was fatally shot and killed on the 600 block of North Brice Street in Baltimore, Maryland. (ECF No. 1 ¶ 36.) Now-deceased Baltimore Police Department Sergeant John Barrick was the lead homicide

---

[3] Also pending is (1) Defendant Baltimore Police Department's Motion to Dismiss Plaintiff's Complaint Against "Estate of John Barrick" (ECF No. 34), which was later withdrawn, (ECF No. 68); and (2) the Parties' Joint Motion for Leave of Court to Conduct BPD's Corporate Designee Deposition After Discovery Deadline (ECF No. 97). By separate Order, the Court (1) INSTRUCTS the Clerk of Court to update the docket to reflect that Defendant Baltimore Police Department's Motion to Dismiss Plaintiff's Complaint Against "Estate of John Barrick" (ECF No. 34) is WITHDRAWN; and (2) GRANTS the Parties' Joint Motion for Leave of Court to Conduct BPD's Corporate Designee Deposition After Discovery Deadline (ECF No. 97).

[4] *Shipley v. Disney*, No. SAG-21-3173 (D. Md. Dec. 12, 2022), ECF No. 65; *Washington v. Balt. Police Dep't*, No. SAG-19-2473, 2020 U.S. Dist. LEXIS 198596, at *3–6 (D. Md. Oct. 26, 2020); *Burgess v. Balt. Police Dep't*, No. RDB-15-0834, 2016 U.S. Dist. LEXIS 37470, at *3–4 (D. Md. Mar. 23, 2016); *but see Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. 2020) (denying without prejudice the defendants' motion to bifurcate in wrongful conviction case, explaining that "given the posture of the case," the court could not yet determine whether bifurcation of trial was warranted).

detective and supervisor on the case, with Detectives Donald Licato and Frank Barlow actively investigating the case, "participating in almost every witness interview and report." (*Id.* ¶ 37.)

On September 26, 1991, Plaintiff Anthony Hall—born September 20, 1962—was charged for Dorsey's murder and the use of a handgun to commit a felony. (*Id.* ¶¶ 32, 91.) On April 29, 1992, Hall went to trial in the Circuit Court for Baltimore City. (*Id.* ¶ 102.) During the two-day trial, the jury heard from only four witnesses, all called by the prosecution. (*Id.* ¶¶ 102–17.) BPD Officer Bruce Button testified that he discovered Dorsey's body around 10:40 PM on Brice Street. (*Id.* ¶ 108.) Sergeant Barrick falsely testified that there were only two "eyewitnesses" to the shooting: Gerald Patterson and Nancy Hill, omitting that Patterson was not actually an eyewitness, that Hill could not actually identify the perpetrators, and that several other eyewitnesses described the perpetrators in a manner that excluded Plaintiff Anthony Hall or were evidence of his innocence. (*Id.* ¶¶ 109–11.) Finally, the jury heard from Patterson and Hill—the only two non-police witnesses to testify—whom Sergeant Barrick falsely testified were the only "eyewitnesses" to the shooting, and whose false testimony was coerced through threats and intimidation. (*Id.* ¶¶ 112–17.) Specifically, Patterson was threatened with incarceration for an unrelated criminal charge if he did not state that he heard shots and saw Hall run by him with a gun, despite the fact that Patterson was not in the area when the murder occurred and had stated as much to law enforcement. (*Id.* ¶¶ 112–14.) Similarly, BPD threatened to take away Hill's children if she did not testify that on the evening of the murder around 10:30 PM, she was walking near the crime scene with her children when Dorsey ran past them, knocking down her daughter and being pursued by two men into an alley, one of whom was carrying a gun and whom Hill claimed to recognize as Hall. (*Id.*

¶¶ 115–17.)  Because no physical evidence or apparent motive linked Hall to the crime, the prosecutor's case rested solely on the witnesses' false and coerced testimony.  (*Id.* ¶ 107.)  On April 30, 1992, after less than five hours of trial time over two days, Hall was convicted of the second-degree murder of Dorsey, as well as use of a handgun in the commission of a felony. (*Id.* ¶¶ 12, 118.)

In the decades following his conviction, Hall maintained his innocence and filed numerous pro se petitions seeking to overturn his conviction.  (*Id.* ¶¶ 13, 120–22.)  Eventually, Hall wrote to the Mid-Atlantic Innocence Project ("MAIP"), who began investigating his conviction and obtained, through public record requests, documents containing sweeping exculpatory and impeachment evidence that had been withheld.  (*Id.* ¶¶ 123–33.)

On June 11, 2021, Hall filed a Petition for Writ of Actual Innocence, which was subsequently amended on February 15, 2023, based on the aforementioned exculpatory and impeachment evidence that had been withheld from him before, during, and after his trial. (*Id.* ¶ 134.)  On March 8, 2023, Judge Charles J. Peters of the Circuit Court for Baltimore City conducted an evidentiary hearing on Hall's Petition.  (*Id.* ¶¶ 135–37.)  Ultimately, on March 15, 2023, Judge Peters granted Hall's Petition for Writ of Actual Innocence, vacating his convictions and ordering a new trial.  (*Id.* ¶ 138.)  On April 18, 2023, the State of Maryland dismissed the case against Plaintiff.  (*Id.* ¶ 143.)

On June 30, 2023, Hall filed a petition with the State of Maryland Office of Administrative Hearings ("OAH") pursuant to the Walter Lomax Act,[5] seeking compensation

---

[5]  The Walter Lomax Act enables compensation for those who have received a pardon for wrongful conviction or who can prove to an administrative law judge that they were wrongfully convicted for a felony.  MD. CODE ANN., STATE FIN. & PROC. §§ 10-501, 10-502.

for the more than twenty-five years he served in prison as a result of his wrongful conviction. (*Id.* ¶¶ 17, 144.)  Following an evidentiary hearing on that petition during which Hill and several others testified, the OAH Administrative Law Judge ("ALJ") ruled in Hall's favor.  (*Id.* ¶¶ 145–49.)  The ALJ stated: "There is no evidence tying the [Mr. Hall] to the murder of Mr. Dorsey and it was only through manipulating the witnesses and hiding the evidence that the City obtained a conviction in the first place."  (*Id.* ¶ 149.)

On April 18, 2024, Hall initiated the instant action against BPD and the Officer Defendants.  (ECF No. 1.)  Counts I, II, III,[6] IV, V, and VI are filed under 42 U.S.C § 1983, and Counts VII, VIII, and IX assert claims under Maryland law.  (ECF No. 1 ¶¶ 178–222.) More specifically, Counts I, II, III, and IV allege violations of Hall's right to due process under the Fourteenth Amendment, arising out of the Officer Defendants'—that is, Detectives Licato and Barlow and now-deceased Sergeant Barrick—fabrication of evidence against Hall ("Count I") (*id.* ¶¶ 178–81); failure to adequately investigate and disclose exculpatory and impeachment evidence[7] ("Count II") (*id.* ¶¶ 182–85); malicious prosecution ("Count III") (*id.* ¶¶ 186–90); and failure to intervene ("Count IV") (*id.* ¶¶ 191–94).  Count V alleges violation of Hall's right

---

[6]  The Complaint mislabels Count III as "Count IIII."  (ECF No. 1 ¶¶ 186–90.)  For clarity, the Court refers to this count as Count III.

[7]  Count II, as well as Counts III, IV, and V, focus on alleged *Brady* violations.  In *Brady v. Maryland*, 373 U.S. 83 (1963), the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87.  A *Brady* violation occurs when a defendant can show that the evidence at issue (1) was favorable to the defendant, (2) material to the defense, and (3) the prosecution had the evidence but failed to disclose it. *Moore v. Illinois*, 408 U.S. 786, 794–95 (1972); *United States v. Young*, 916 F.3d 368, 383 (4th Cir. 2019).  *Brady* extends to law enforcement officers; they have a duty to provide the prosecution with any material evidence that is favorable to a defendant.  *See Barbee v. Warden, Md. Penitentiary*, 331 F.2d 842, 846–47 (4th Cir. 1964).  *Brady* imposes this duty on any officer who has knowledge of the exculpatory or impeachment evidence. See *Owens v. Balt. City State's Atty's Off.*, 767 F.3d 379, 397–98 (4th Cir. 2014).  However, police officers "commit a constitutional violation only when they suppress exculpatory evidence in bad faith." *Gilliam v. Sealey*, 932 F.3d 216, 238 (4th Cir. 2019).

to due process under the Fourteenth Amendment, against Sergeant Barrick for supervisory liability ("Count V") (*id.* ¶¶ 195–200). Count VI alleges a *Monell* claim[8] against the BPD, pursuant to the Fourteenth Amendment ("Count VI") (*id.* ¶¶ 201–07). Counts VII and VIII allege state law claims of malicious prosecution ("Count VII") (*id.* ¶¶ 208–15) and internal inflictions of emotional distress ("Count VIII") (*id.* ¶¶ 216–18) against the Officer Defendants. Lastly, Count IX alleges indemnification against BPD ("Count IX") (*id.* ¶¶ 219–22). Defendants filed Answers to the Complaint (ECF Nos. 13 (Answer of BPD); 16 (Answer of Licato); 17 (Answer of Barlow); 80 (Answer of Estate of John Barrick)). This motion, which seeks to bifurcate for trial the *Monell* claim against BPD raised in Count VI and further stay discovery as to that claim, followed shortly thereafter. (ECF No. 28.) Plaintiff responded in opposition to the motion (ECF No. 36), and Defendants replied (ECF No. 43). Defendants' Joint Motion to Bifurcate and Stay Discovery (ECF No. 28) is ripe for review.

## ANALYSIS

Defendants ask this Court to bifurcate Hall's § 1983 *Monell* claim raised in Count VI against BPD. (ECF No. 28-1.) Defendants contend doing so will further judicial expediency and economy (*id.* at 4–7; *see also* ECF No. 43 at 5–8); and will protect all Defendants against the risk of prejudice (ECF No. 28-1 at 7–9; *see also* ECF No. 43 at 9–10). Defendants also request that discovery related to Hall's *Monell* claim be stayed pending resolution of the

---

[8] In what is commonly referred as to a *Monell* claim, 42 U.S.C. § 1983 permits a plaintiff to bring a claim directly against a municipality if it causes a deprivation of a constitutional right through an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). Accordingly, "a viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights." *Saltz v. City of Frederick*, 538 F. Supp. 3d 510, 554 (D. Md. 2021) (citing *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *Kirby v. City of Elizabeth City*, 388 F.3d 440, 451 (4th Cir. 2004), *cert. denied*, 547 U.S. 1187 (2006); *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003)).

remaining § 1983 claims raised in Counts I, II, III, and IV against the Officer Defendants and in Count V against Sergeant Barrick. (ECF No. 28-1 at 9–10.)

Hall opposes Defendants' request for bifurcation and stay, advancing several arguments in opposition to the Defendants' motion. (ECF No. 36.) First, Hall argues that the Defendants' motion should be denied because: BPD could be found liable even if the Officer Defendants are not. (*Id.* at 13–15.) Second, Hall argues that Defendants' motion overlooks the overlapping nature of the evidence Hall would use to prove the Officer Defendants' liability and his *Monell* claim. (*Id.* at 16–18.) Third, Hall argues that the Defendants' claim that bifurcation would further judicial expediency and economy is unsupported and premature. (*Id.* at 19–22.) Fourth, Hall argues that unique circumstances presented here, such as the prior judicial findings of misconduct and the fact that BPD has not agreed to indemnify the Officer Defendants in this matter, counsel against bifurcation. (*Id.* at 22–25.) Fifth, Hall contends that he would be prejudiced by bifurcation, (*id.* at 25–26), and characterizes the Defendants' fear that they would suffer prejudice if bifurcation were denied as "speculative." (*Id.* at 26–28.) With respect to the stay, Hall argues that Defendants "have not overcome the strong presumption against a stay of discovery," and even if the Court bifurcates the *Monell* claim, that the Court should still deny the request to stay discovery to allow "trial #2 [to] be scheduled immediately after trial #1 concludes." (*Id.* at 28–29.)

In reply, Defendants reiterate that bifurcation will further judicial expediency and economy (ECF No. 43 at 5–8); and will protect all Defendants against the risk of prejudice (*id.* at 9–10). They further contend that Plantiff's arguments that *Monell* liability is not contingent upon a finding of individual officer liability and the facts and post-conviction history counsel

against bifurcation are "incorrect legal conclusions" and/or "irrelevant." (*Id.* at 2–5, 9.) Lastly, Defendants contend that it is not premature to order bifurcation. (*Id.* at 8.)

As further explained below, the Court finds that bifurcation of the *Monell* claim against BPD is appropriate under Fed. R. Civ. P. 42(b) due to "convenience," "to avoid prejudice to the Defendants" without prejudicing Hall, and "to expedite and economize" this litigation. Similarly, a related stay of discovery on the *Monell* claim against BPD is appropriate under Fed. R. Civ. P. 26.

In relevant part, Federal Rule of Civil Procedure 42(b) provides that: "For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). As Judge Hollander of this Court observed in *Saltz v. City of Frederick*, 538 F. Supp. 3d 510 (D. Md. 2021), "Rule 42(b) is disjunctive, meaning '[o]nly one of these criteria need be met to justify bifurcation.'" *Id.* at 561 (citing *Saxion v. Titan-C-Mfg.*, 86 F.3d. 553 556 (6th Cir. 1996)). Trial courts have broad discretion in deciding whether to bifurcate claims for trial, and the exercise of that discretion will be set aside only if clearly abused. *Dixon v. CSX Transp., Inc.*, 990 F.2d 1440, 1443 (4th Cir. 1993), *cert. denied*, 510 U.S. 915 (1993).

In the instant case, the majority of Plaintiff's claims arise under 42 U.S.C. § 1983, also known as the Civil Rights Act of 1871. Pursuant to Section 1983, a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. *See, e.g., Filarsky v. Delia*, 566 U.S. 377 (2012); *Owens v. Balt. City State's Atty's*

*Off.*, 767 F.3d 379 (4th Cir. 2014). However, § 1983 "'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)); *see also Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017).

Simply stated, § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that a person acting under color of state law deprived him of a constitutional right or a right conferred by a law of the United States. *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615 (4th Cir. 2009); *Safar*, 859 F.3d at 245 ("The first step in any such claim is to pinpoint the specific right that has been infringed."). "The statutory color-of-law prerequisite is synonymous with the more familiar state-action requirement—and the analysis for each is identical." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In what is commonly referred as to a *Monell* claim, 42 U.S.C. § 1983 permits a plaintiff to bring a claim directly against a municipality if it causes a deprivation of a constitutional right through an official policy or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). In *Monell*, the Supreme Court determined that local governmental bodies may be liable under § 1983 based on the unconstitutional actions of individual defendants, but only if those defendants were executing an official policy or custom of the local government that resulted in a violation of the plaintiff's rights. *Id.* at 690–91. But liability attaches "only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris*, 489 U.S. 378, 384 (1989).

To state a § 1983 claim against a municipality, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 338 (4th Cir. 1994); *see also Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999) (stating that "it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom"). A plaintiff may allege four types of policies, customs, or practices for which a municipality may be held liable: "(1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law." *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter*, 164 F.3d at 217).

With that context, the Court returns to the issue chiefly before it. While the determination of whether bifurcation is appropriate is fact specific, *Dawson v. Prince George's Cnty.*, 896 F. Supp. 537, 539 (D. Md. 1995), judges in this Court have observed that "[c]ases that contain *Monell* claims 'are good candidates for bifurcation.'" *Johnson v. Balt. Police Dep't*, 500 F. Supp. 3d 454, 460 (D. Md. 2020) (citation omitted). "Judges in this district have repeatedly ruled that bifurcation 'is appropriate and often desirable' in cases involving both § 1983 claims against individual police officers and *Monell* claims." *Saltz*, 538 F. Supp. 3d at 561.

"Generally, a plaintiff's § 1983 claims 'hinge on his ability to show that [individual defendants] violated his constitutional rights.'" *Haughie v. Wexford Health Sources, Inc.*, No.

ELH-18-3963, 2020 U.S. Dist. LEXIS 40770, at *41 (D. Md. Mar. 9, 2020) (quoting *Baker v. Dist. of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003)). Nevertheless, courts have recognized "narrow circumstances in which 'a finding of no liability on the part of the individual municipal actors can co-exist with a finding of liability on the part of the municipality.'" *Johnson*, 500 F. Supp. 3d at 463 (citing *Int'l Ground Transp. v. Mayor & City Council of Ocean City*, 475 F.3d 214, 219 (4th Cir. 2007) ("[A] situation may arise in which a finding of no liability on the part of the individual municipal actors can coexist with a finding of liability on the part of the municipality.")). "But, in such cases, municipal liability under *Monell* is limited to situations in which 'such a finding would not create an *inconsistent* verdict' as to the individual defendants." *Haughie*, 2020 U.S. Dist. LEXIS 40770, at *43 (quoting *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 305 (7th Cir. 2010) (emphasis in *Thomas*)). "One such situation is when the individual defendants are entitled to qualified immunity."[9] *Id.*; *see also Int'l Ground Transp.*, 475 F.3d at 219 ("[B]ecause municipalities are not entitled to assert a qualified immunity defense, a finding of a constitutional violation is conclusive as to their liability. Thus, a jury could find that a constitutional violation has occurred but that the individual defendants are entitled to qualified immunity.").

Indeed, each of the Defendants raised qualified immunity in their respective answer. (*See* ECF Nos. 13, 16, 17, 80.) Nevertheless, while BPD's *Monell* liability may or may not depend on the Officer Defendants' liability, the Court need not reach any such conclusion,

---

[9] Other such situations include "where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation," *Speer v. City of Wynne*, 276 F.3d 980, 986 (8th Cir. 2002); and where "the injuries complained of are not solely attributable to the actions of named individual defendants," *Barrett v. Orange Cnty. Hum. Rts. Comm'n*, 194 F.3d 341, 350 (2d Cir. 1999). While Plaintiff cites both of these cases in their opposition, (ECF No. 36 at 13, 15), neither of these two situations are present in the instant case.

because, quite simply, that is not determinative of the Court's analysis as to whether to bifurcate Count VI and stay the related discovery. *Haughie*, 2020 U.S. Dist. LEXIS 40770, at *41–48. As Judge Hollander aptly noted in *Tserkis v. Balt. Cnty.*, No. ELH-19-202, 2019 U.S. Dist. LEXIS 173369 (D. Md. Oct. 4, 2019)

> The key question is whether the [Officer Defendants] committed constitutional violations, not whether they can be held liable for them. [Plaintiff] will have a viable *Monell* claim against the [municipality], despite the [Officer Defendants] being found not liable, if the fact-finder concludes that the [Officer Defendants] violated [Plaintiff's] constitutional rights, and that those rights were not clearly established, such that the [Officer Defendants] are entitled to qualified immunity. On the other hand, if the fact-finder concludes that the [Officer Defendants] are not liable under § 1983 on the ground that they did not violate [Plaintiff's] constitutional rights, then [the] *Monell* claim would founder [sic] as a matter of law. In either circumstance, the question of whether any police officer committed a constitutional violation is central to [the *Monell*] claim[.]

*Id.* at *20. Thus, while BPD's liability may co-exist with the Officer Defendants' non-liability, the question of whether Detectives Licato and Barlow and Sergeant Barrick committed a constitutional violation is central to Hall's claim against BPD.

Furthermore, the rationale for bifurcation of *Monell* claims in § 1983 actions is not just that those claims generally, or often, hinge on individual defendant liability for constitutional violations. Bifurcation also works to "spare the parties from expending valuable resources in discovery, because resolution of the claims as to the individual defendants may obviate the need to litigate the *Monell* claim." *Johnson*, 500 F. Supp. 3d at 460. Bifurcation also "prevent[s] the potential prejudice to individual defendants that might result from the introduction of inflammatory evidence concerning the municipality's policies, practices, or customs." *Id.*

In the Court's view, bifurcation is appropriate for the reasons argued by Defendants. While the Court understands Plaintiff's resistance to this conclusion, the simple fact is that

bifurcation of the *Monell* claim will further judicial expediency and economy, and will protect all Defendants against the risk of prejudice, without resulting in substantial prejudice to the Plaintiff.

First, it would save time and resources, and promote judicial economy, to defer consideration of the *Monell* claim until after a determination of the liability of the Officer Defendants. It is possible that, if Hall succeeds on his § 1983 claims against the Officer Defendants, BPD might consider a resolution of the *Monell* claim, without the need for a trial, which would spare the parties and the Court of the burdens and challenges of litigating the *Monell* claim. While Plaintiff resists this conclusion by characterizing Defendants' request as "unsupported" and "premature,"[10] (ECF No. 36 at 19–22) and by emphasizing the overlapping nature of the evidence he would use to prove the Officer Defendants' liability and his *Monell* claim (*id.* at 16–18), the Court is persuaded that bifurcation of the *Monell* claim and a related stay of discovery is undoubtedly more efficient than the alternative.

Relatedly, the scope of discovery involved in Plaintiff's *Monell* claim will be far broader than Plaintiff's § 1983 claims against the Officer Defendants. That is because *Monell* liability, by its nature, turns on evidence concerning victims other than Plaintiff and alleged offenders other than the Officer Defendants. *Haughie*, 2020 U.S. Dist. LEXIS 40770, at *49. Thus, Defendants' contention that "it is certain that the discovery in this case regarding the § 1983 *Monell* claim will be an enormous and lengthy task" (ECF No. 28-1 at 10) is well-taken.

---

[10] The Court notes that the discovery deadline in this case is April 4, 2025. (ECF No. 92.) While Plaintiff's argument that Defendants' request for bifurcation was "premature" may have been more persuasive back when the issue was being briefed, such argument does not seem to be reasonable or in accordance with the facts at this late stage in the litigation.

In addition, while evidence of any prior instances of fabrications of evidence, of failures to adequately investigate and disclose exculpatory and impeachment evidence, of malicious prosecution, and of failure to intervene may be admissible against BPD with respect to the *Monell* claim, such evidence is likely inadmissible against the Officer Defendants.[11]  As Judge Hollander explained in *Haughie*, "[s]uch evidence is also potentially inflammatory in regard to the individual defendants, and it would be difficult for the jury to compartmentalize such evidence." 2020 U.S. Dist. LEXIS 40770, at *49.  While Plaintiff characterizes any prejudice feared by Defendants as "speculative" and further suggests that any prejudice could be cured by motions *in limine* and cautionary jury instructions, (ECF No. 36 at 26–28), the Court is unpersuaded.

Plaintiff insists that he will be prejudiced by bifurcation, arguing that bifurcation would further delay final disposition of this matter and deny him access to proof of his *Brady* claim against the Officer Defendants.  (ECF No. 26 at 25–26.)  Plaintiff's insistence that bifurcation would further delay final disposition resulting in prejudice to Hall is unpersuasive, as such prejudice—if any—is greatly outweighed by the risk of prejudice posed to the Defendants. With respect to Plaintiff's argument that bifurcation would deny him access to proof of his *Brady* claim against the Officer Defendants, Plaintiff remains free to endeavor to obtain discovery of BPD routine police conduct at the relevant time to prove his *Brady* claims against the Officer Defendants.  Bifurcation will not deprive him of "discovery regarding any

---

[11] Of course, because bad faith can be inferred based on gross deviations from routine police conduct with respect to Plaintiff's *Brady* claims against the Officer Defendants, *Johnson*, 500 F. Supp. at 462 (citing *Mellen v. Winn*, 900 F.3d 1085, 1104 (9th Cir. 2018); *Jimenez v. City of Chicago*, 732 F.3d 710, 721–22 (7th Cir. 2013)), Plaintiff remains free to endeavor to obtain discovery of BPD routine conduct at the relevant time to prove his *Brady* claims against the Officer Defendants.

nonprivileged matter that is relevant to any party's claim or defense," related to his claims against the Officer Defendants, and that is "proportional to the needs of the case." *See* FED. R. CIV. P. 26(b)(1).

Lastly, the Court is unpersuaded by Plaintiff's argument that unique circumstances of this case—namely, prior judicial findings of misconduct and the fact that BPD has not agreed to indemnify the Officer Defendants—counsel against bifurcation. (ECF No. 36 at 22–25.) While Hall's case is quite remarkable, it does not follow that bifurcation is inappropriate. With respect to Hall's indemnification argument, the risk that "Hall could potentially have to proceed all the way through trial against the Officer Defendants just to have to start over against BPD"—as frustrating as that possibility may be—does not influence the Court's conclusion that bifurcation furthers judicial expediency and economy, and protects all Defendants against the risk of prejudice, without resulting in substantial prejudice to the Plaintiff.

The Court turns to consider the requested stay. As with the decision to bifurcate, decisions about the appropriate timing and sequence of discovery lie within the discretion of the trial court. *See* Fed. R. Civ. P. 26 (allowing discovery rules, including those pertaining to scheduling, to be modified "by court order"). Again, Plaintiff insists that Defendants "have not overcome the strong presumption against a stay of discovery," and even if the Court bifurcates the *Monell* claim, that the Court should still deny the request to stay discovery to allow "trial #2 [to] be scheduled immediately after trial #1 concludes." (ECF No. 36 at 28– 29.) In brief, in light of the bifurcation, a stay of discovery relating to the *Monell* claims is also appropriate. Accordingly, Defendants' Joint Motion to Bifurcate and Stay Discovery (ECF

No. 28) is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' Joint Motion to Bifurcate and Stay Discovery (ECF No. 28) is GRANTED.

A separate Order follows.

Date: March 26, 2025

_____/s/_____

Richard D. Bennett
United States Senior District Judge